IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY BACKUS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONAGRA FOODS, INC.,<br><br>Defendant.<br>_____ / | No. C 16-00454 WHA<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS, AND (2) ORDER FOR LIMITED DISCOVERY** |

**INTRODUCTION**

In this putative class action, defendant food manufacturer moves to dismiss the complaint pursuant to FRCP 12(b)(1) and 12(b)(6). For the reasons stated herein, defendant's motion is **GRANTED IN PART** and **DENIED IN PART**, subject to an **ORDER FOR LIMITED DISCOVERY** to resolve the issue of standing.

**STATEMENT**

Plaintiff Troy Backus brings this putative class action against defendant's use and labeling of artificial trans-fat in its margarine products. For many years, Backus purchased and consumed a variety of margarine spreads and sticks under the brand name Fleischmann's, which is manufactured and sold by defendant ConAgra Foods, Inc. ConAgra's products contained partially-hydrogenated oil, a food additive derived from low-cost oils. The manufacturing process for partially-hydrogenated oils produces artificial trans-fat with a chemical structure

different from most naturally-occurring fat.  The chemical properties of artificial trans-fat give partially-hydrogenated oil a longer shelf life as compared to other additives derived from low-cost oils (Amd. Compl. ¶ 4).

Backus's complaint cites numerous studies that purportedly link the consumption of artificial trans-fat to increased risk of certain medical conditions such as cardiovascular heart disease, diabetes, breast, prostate and colorectal cancer, Alzheimer's disease, and organ damage.  In particular, the complaint alleges "[t]here is no 'safe level' of artificial trans-fat intake" and "any incremental increase in trans-fat increases risk of [cardiovascular heart disease]" (*id.* at ¶¶ 4–5).  The Food and Drug Administration has issued a final determination that partially-hydrogenated oils are no longer "generally recognized as safe."  80 Fed. Reg. 34650 (June 17, 2015).  Pursuant to that determination, manufacturers have until 2018 to remove partially-hydrogenated oils from their products.

Although all of ConAgra's margarine products at issue contained partially-hydrogenated oils (and listed those oils among the ingredients of those products), the front and back product labels described the product as containing "0g of Trans-Fat," and "No Trans-Fat."  In addition, ConAgra's labels claim its products contain "100% Less Cholesterol" and "70% Less Saturated Fat" than butter and "[t]he delicious taste of Fleischmann's enhances your favorite foods while maintaining your healthy lifestyle" (*id.* at ¶¶ 17–18).

Backus claims that he relied on the various health and wellness claims appearing on ConAgra's packaging, which he claims implied the products were healthy.  Backus claims that he would not have purchased the margarine products absent these claims (*id.* at ¶ 14). Backus further claims that he could not have discovered earlier ConAgra's allegedly unlawful acts described herein because the dangers of artificial trans-fat were unknown to him as a lay consumer (*id.* at ¶ 24).

This is not Backus's first foray into litigation regarding artificial trans-fat.  Backus has filed three prior lawsuits regarding artificial trans-fat and food labeling.  *Backus v. General Mills, Inc.*, No. 15-1964 (N.D. Cal. Aug. 18, 2015) (Judge Thelton Henderson); *Backus v. H.J. Heinz Co.*, No. 15-2738 (N.D. Cal. Oct. 16, 2015) (Judge William Orrick) (voluntarily

2

dismissed with prejudice), *Backus v. Nestle USA, Inc.*, No. 15-1963 (N.D. Cal. Mar. 8, 2016) (Judge Maxine Chesney) (pending appeal).

In January 2016, Backus commenced this action against ConAgra and seeks to represent two nation-wide classes, one for persons who purchased ConAgra's margarine products containing partially-hydrogenated oil and the other for persons who purchased ConAgra's margarine products in packaging containing the allegedly misleading claims (Amd. Compl. ¶ 25).

Backus's complaint alleges various claims for relief for ConAgra's *use* of trans-fat, on the basis that using trans-fat in food products is unlawful, and for its product *mislabeling*, on the basis that its labels misrepresented the product.

As to the *use claims*, Backus alleges the following violations: (1) the unlawful prong of California Business and Professions Code Section 17200, (2) the unfair prong of Section 17200, and (3) breach of the implied warranty of merchantability.

As to the *mislabeling claims*, Backus alleges the following violations: (1) the unfair prong of Section 17200, (2) the unlawful prong of Section 17200, (3) the fraudulent prong of Section 17200, (4) the California False Advertising Law, California Business and Professions Code Sections 17500, *et seq.*, (5) the California Consumer Legal Remedies Act, California Civil Code Sections 1750, *et seq.*, and (6) breach of the express warranty.

Backus seeks, among other things, restitution, disgorgement, punitive damages, injunctive relief, and attorney's fees. ConAgra now moves to dismiss Backus's complaint pursuant to FRCP 12(b)(1) and 12(b)(6). Additionally, ConAgra requests judicial notice of the complaints and orders pertaining to Backus's prior lawsuits as well as Backus's counsel's public comment on partially-hydrogenated oils. The records are not necessary to this decision. As such, the request for judicial notice is **DENIED AS MOOT**. This order follows full briefing and oral argument.

**ANALYSIS**

*First,* this order will address whether federal law bars the use claims. *Second*, it will address express federal preemption and the sufficiency of the mislabeling claims. *Third*, it will address Article III standing. *Fourth*, it will provide the details for limited discovery.

1. **BACKUS'S USE CLAIMS.**

Backus alleges that ConAgra violated California and federal law by including artificial trans-fat in its products.

    **A.    The Use of Trans-Fat is Not Unlawful Under Federal Law.**

Backus alleges that ConAgra violated the unlawful prong of Section 17200 because it violated federal law by using partially-hydrogenated oils in its food products. Under the unlawful prong, Section 17200 "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

Backus argues that the sale of food with trans-fat is unlawful because it violates the Federal Food, Drug, and Cosmetic Act in various ways, specifically portions of the FDCA that prohibit the use of "adulterated foods." The FDCA deems a food "adulterated" if it contains any unsafe food additive. 21 U.S.C. 342(a)(2)(c). Moreover under Section 348(a), the FDA must grant pre-market approval to all food additives. However, the FDCA explicitly exempts from the definition of "food additive" foods Generally Recognized as Safe (GRAS), which is a status of safety "adequately shown through scientific procedures." 21 C.F.R. 170.30.

ConAgra's products contain trans-fat, which is a partially-hydrogenated oil. The FDA recently determined that partially-hydrogenated oils are no longer GRAS, stating that "there is no longer a consensus among qualified experts that partially-hydrogenated oils are generally recognized as safe for any use in human food." 80 Fed. Reg. at 34650.

In its determination, the FDA set a date for compliance for June 18, 2018. 80 Fed. Reg. at 34651. The FDA said the compliance date will have the additional benefit of minimizing market disruptions by providing the industry with sufficient time to identify suitable replacement ingredients. *Id.* at 34669.

4

1   Here, Backus has not stated a plausible claim that the sale of margarine was unlawful
2   under federal law.  Although the FDA never formally listed partially-hydrogenated oils as
3   GRAS, it acknowledged that the food industry treated them as GRAS for decades.  Multiple
4   statements in the FDA's final order imply that partially-hydrogenated oils were considered
5   GRAS until the order revoked that status.  *See id.* at 34651, 34656.  Moreover, the FDA's final
6   decision not to prohibit the sale of products containing partially-hydrogenated oils until 2018
7   indicates that it was not and is not unlawful under federal law to sell them before the
8   compliance date.

9   Backus argues that partially-hydrogenated oils are unsafe but ignores the fact that they
10  were widely treated as GRAS, at least by the food industry, until very recently, and the FDA
11  has permitted their continued use until 2018.  Federal law, therefore, cannot serve as the basis
12  for his "unlawful" claim.

### B. Conflict Preemption Bars State Law Claims.

14  ConAgra contends that federal law preempts any remaining state law claims against the
15  use of trans-fat.  This order agrees.

16  As previously discussed, the FDA issued a final determination that stated that
17  partially-hydrogenated oils are no longer GRAS and manufacturers have until 2018 to remove
18  partially-hydrogenated oils from their products.  Because Backus's lawsuit seeks to make it
19  immediately unlawful to market or sell any food or product that contains partially-hydrogenated
20  oils, ConAgra sets forth the argument that Backus's claims are barred by conflict preemption.

21  Conflict preemption applies when "compliance with both federal and state regulations is
22  a physical impossibility" or where state law stands as an obstacle to the accomplishment and
23  execution of the full purposes and objectives of Congress.  *Ting v. AT&T*, 319 F.3d 1126, 1136
24  (9th Cir. 2003); *see also Geier v. Am. Honda Motor Co., Inc.*, 529 U.S. 861, 873–77 (2000).

25  In a prior lawsuit filed by Backus against Nestle for similar trans-fat labeling and use
26  claims, Judge Maxine Chesney fully examined the issue of conflict preemption and ultimately
27  agreed with Nestle's argument that conflict preemption barred Backus's use claims.  *Backus v.*
28  *Nestle USA, Inc.*, No. 15-1963, 2016 WL 879673, at *3 (N.D. Cal. Mar. 8, 2016).  There, Judge

5

1  Chesney found that the use claims challenging Nestle's past and current inclusion of
2  partially-hydrogenated oils in its products "effectively negate[d]" the FDA's order setting a
3  compliance date in 2018. Backus's use claims against Nestle therefore stood as an obstacle to
4  the accomplishment and execution of the full purposes and objectives of the FDA in adopting
5  that order. *Id.* at *4.

As he did in *Nestle*, here Backus relies on the FDA's statement that state or local laws that prohibit or limit the use of partially-hydrogenated oils in food "are not likely to be in conflict with federal law, or to frustrate federal objectives." *See* 80 Fed. Reg. 34650, 34655. But Judge Chesney found this statement ambiguous because it did not specify any particular state law. Furthermore, in the sentence immediately preceding this statement, the FDA *"decline[d] to take a position regarding the potential for implied preemptive effect of this order on any specific state or local law; as such matters must be analyzed with respect to the specific relationship between the state or local law and the federal law." Id.* at 34655 (emphasis added).

In *Guttman v. Nissin Foods (U.S.A.) Company, Inc.*, No. 15-00567, 2015 WL 4309427 (N.D. Cal. July 15, 2015), the undersigned allowed identical use claims to proceed on the grounds that the FDA's 2015 determination on partially-hydrogenated oils did not establish a safe harbor from liability under California law. (Guttman's claims were later dismissed for lack of standing.) Here, however, the Court finds the argument for conflict preemption to be far more persuasive. This is especially true in light of the 2016 Consolidated Appropriations Act, which includes the following on partially-hydrogenated oils:

> No partially-hydrogenated oils . . . shall be deemed unsafe within the meaning of Section 409(a) [of 21 U.S.C. 348(a)] and no food that is introduced or delivered for introduction into interstate commerce that bears or contains a partially-hydrogenated oil shall be deemed adulterated under Sections 402(a)(1) [of 21 U.S.C. 342(a)(1)] or 402(a)(2)(C)(i) [of 21 U.S.C. 342(a)(2)(C)(i)] by virtue of bearing or containing a partially-hydrogenated oil until the compliance date as specified in such order (June 18, 2018).

Consolidated Appropriations Act, 2016, Pub. L. No. 114–113, § 754, 129 Stat. 2243, 2284 (2015).

6

In sum, the Court finds that Backus's Section 17200 claims, which would impose an immediate prohibition on the use of partially-hydrogenated oils in all foods under all circumstances, would stand as an obstacle to the fulfillment of the FDA's objectives, as embodied in its regulatory scheme setting a compliance date for 2018, and in conflict with Congress' decision not to deem partially-hydrogenated oils unsafe, or the food containing them adulterated, until the 2018 compliance date set by the FDA in its Final Determination of June 17, 2015.

Accordingly, Backus's remaining use claims are **DISMISSED** as preempted. This order now turns to Backus's mislabeling claims.

### 2. BACKUS'S MISLABELING CLAIMS.

#### A. Preempted Claims.

Backus alleges that ConAgra mislabeled its products in violation of common law and state statutes. As an initial matter, federal law extensively governs the labels on food products and expressly preempts some of Backus's mislabeling claims.

Express preemption results from an express congressional directive displacing state law. *Altria Grp. Inc. v. Good*, 555 U.S. 70, 76 (2008). Congress enacted the Nutrition Labeling and Education Act (NLEA) to strengthen the FDA's authority to regulate food labels. Section 353-1(a)(1)(5) of Title 21 of the United States Code expressly preempts a state from establishing requirements that are "not identical" to the requirements set forth in the NLEA and the implementing regulations promulgated thereunder.

The FDA has promulgated regulations that clarify the preemptive effect of Section 353-1(a)(1)(5). Pursuant to Section 1001(c)(4), preemption applies when the State would otherwise directly or indirectly impose obligations or have provisions that are (1) not imposed by or contained in the applicable provision or (2) differ from those specifically imposed by or contained in the applicable provision.

Accordingly, the FDA preempts the following mislabeling claims.

7

### (1) The "70% Less Saturated Fat" And "100% Less Cholesterol" Claims.

ConAgra's labels claim that its margarine products have "70% Less Saturated Fat" and "100% Less Cholesterol" compared to butter products. Statements about a product's nutrient content in comparison to a reference product are called "relative claims," which the FDA regulates pursuant to Section 101.13(j) of Title 21 of the Code of Federal Regulations.

Section 101.13(j) provides that "[a] food may bear a statement that compares the level of a nutrient in the food with the level of a nutrient in a reference food." The reference food may be a dissimilar food within a product category that can generally be substituted for the other in the diet. 21 C.F.R. 101.13(j)(l)(i)(A). ConAgra's relative claims are compliant with Section 101.13(j) because it does just that.

Backus alleges that the labels' relative claims are deceptively misleading because although ConAgra's margarine products have less cholesterol and less saturated fat than butter, ConAgra ought to specify alongside these relative claims that its own products, unlike butter, contain artificial trans-fat. Requiring ConAgra to disclose to consumers that butter contains no trans-fat while its margarine products do contain trans-fat would impose an obligation not imposed by the applicable provision above. Thus, federal law preempts this claim and it is **DISMISSED**.

### (2) The "0g of Trans-Fat" Claim.

ConAgra's labels claim that its products have "0g of Trans-Fat." This type of statement is an "express nutrient-content claim," which is an explicit statement (rather than an implicit characterization) about the nutrient contents of a food product outside of the nutrition facts panel. Express nutrient-content claims are governed by Section 342® of Title 21 of the United States Code and the regulations promulgated in Section 101.13 of Title 21 of the Code of Federal Regulations.

Section 101.13(i)(3) provides that an express nutrient-content claim may be included on a product label provided "it is not false or misleading in any respect."

Because ConAgra's claims are *outside* of the nutrition box, they constitute an express nutrient-content claim. It is important to note, however, that the FDA requires claims made

8

*inside* the nutrition box, called nutrition facts, to use the "rounded value" for nutrition facts relating to trans-fat content. "If the serving contains less than 0.5 gram[s of trans-fat], the content, when declared, shall be expressed as zero." *Id.* at 101.9(c)(2)(ii). (For the purposes of this instant motion, it is undisputed that ConAgra's products contain less than 0.5 grams of trans-fat.)

Backus alleges that the "0g of Trans-Fat" claim is misleading. But, to require an express nutrient-content claim to use "unrounded" values when the FDA requires trans-fat to be declared as zero in the nutrition facts panel would create a labeling discrepancy confusing to consumers. The FDA expressly preempts this type of discrepancy between the nutrient-content claim and the nutrition facts panel. 58 Fed. Reg. 44020, 44024–25 (Aug. 18, 1993); *see also Carrera v. Dreyer's Grand Ice Cream, Inc.*, 475 F. App'x. 113, 115 (9th Cir. 2012). Accordingly this claim is preempted and therefore **DISMISSED**.

### (3) The "No Trans-Fat" Claim.

Although the "No Trans-Fat" claim seems similar to the federally preempted "0g of Trans-Fat" claim discussed above, it requires different analysis. Backus alleges that ConAgra misrepresented its products with a "No Trans-Fat" claim. Importantly, Backus's complaint contains images of ConAgra's labels, revealing that the entire label claim is "No Trans-Fat *Per Serving*" (Amd. Compl. ¶ 17) (emphasis added).

Section 101.13(i) of Title 21 of the Code of Federal Regulations provides that a label may contain the amount of a nutrient if "[t]he use of the statement on the food implicitly characterizes the level of the nutrient in the food." The addition of "per serving" characterizes the level of the nutrient.

In *Reid v. Johnson & Johnson*, 780 F.3d 952, 962 (9th Cir. 2015), our court of appeals found that the FDA did not expressly preempt challenges to a "No Trans-Fat" statement because unlike the sanctioned "0g of Trans-Fat" statement, the FDA issued warning letters to manufacturers stating that "No Trans-Fat" was an unauthorized nutrient-content claim. *Reid*, however, is distinguishable from our case because ConAgra's labels specify that it contains no trans-fat *per serving*. In its discussion of the FDA's warning letter, our court of appeals

9

1  recognized that while the FDA warned against a general claim for "No Trans-Fat," the letter also
2  stated that the letter's recipient could "make a truthful statement on a product's label that
3  specifies the amount of trans-fat per serving" pursuant to Section 101.13(i).  *Ibid.*  In other
4  words, "No Trans-Fat Per Serving," so long as it is truthful, is in compliance with
5  Section 101.13(i).  Accordingly, federal law preempts this claim and it is **DISMISSED**.

6  This order now turns to whether Backus sufficiently pleaded the remaining mislabeling
7  claims.

### B. Sufficiency of Pleading.

9  ConAgra argues that Backus's remaining mislabeling claims fail to state a claim.

#### (1) The Omission of Artificial Flavor.

11  Backus alleges that ConAgra violated Section 101.22(i) of Title 21 of the Code of
12  Federal Regulations, which provides that if a food label "makes any direct or indirect
13  representations with respect to the primary recognizable flavors . . . such flavor shall be
14  considered the characterizing flavor and shall be declared."  In essence, Backus alleges that
15  because ConAgra represents its margarine products as a substitute for natural butter it must
16  declare "artificial butter flavor" as the characterizing flavor of its margarine products (Amd.
17  Compl. ¶¶ 19–20).

18  Backus's complaint notably omits the relevant exception to Section 101.22(i) pertaining
19  to margarine products, which states that Section 101.22(i) only applies "if the flavoring
20  ingredients impart to the food a flavor other than in semblance of butter."  21 C.F.R. 166.110.

21  The products at issue do not impart a flavor other than butter.  Accordingly, Backus fails
22  to state a plausible claim for relief here and this claim is **DISMISSED**.

#### (2) The "Healthy Lifestyle" Claim.

24  Backus's final mislabeling claim alleges that ConAgra deceptively marketed its products
25  with the phrase, "[t]he delicious taste of Fleischmann's enhances your favorite foods while
26  maintaining your healthy lifestyle."

27  ConAgra argues that the marketing statement above is non-actionable because it provides
28  no basis by which a reasonable person would purchase its product.  ConAgra relies on an

10

unreported district court decision, *Delacruz v. Cytosport, Inc.*, No. 11-3532, 2012 WL 1215243, at *7 (N.D. Cal. Apr. 11, 2012) (Judge Claudia Wilkin) which held that marketing statements that a product is "healthy" were non-actionable because they were "vague, and highly subjective claims as opposed to specific, detailed factual assertion [sic]."

Our court of appeals, however, has found that context matters. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008), held that healthy statements alone might amount to mere puffery, but a number of features of the packaging could still mislead a reasonable consumer. Given that ConAgra's "healthy lifestyle" statement accompanies the statements of "0g of Trans-Fat," "No Trans-Fat," "70% Less Saturated Fat," and "100% Less Cholesterol," Backus adequately pleaded an actionable claim because all those statements combined could mislead a reasonable consumer.

ConAgra further contests whether Backus justifiably relied on these claims. This goes to the issue of standing, discussed below.

### 3. STANDING.

To establish standing, "[a] party invoking federal jurisdiction has the burden of establishing that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution." *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008). When a plaintiff seeks injunctive relief, the plaintiff's showing of legal injury must also establish a sufficient likelihood that he will again be wronged in a similar way. *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). In regard to class actions, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

ConAgra argues that Backus lacks Article III standing, claiming that Backus's prior lawsuits indicate that he knew of the dangers of trans-fat before purchasing the products, yet purchased them anyway. Although this order dismisses all but one of Backus's claims, ConAgra's concerns raise a significant question as to whether Backus has standing to invoke the power of the federal courts. Specifically, ConAgra contends that Backus lacks standing because

(1) he cannot plausibly allege reliance, (2) he has not suffered an economic or health-related injury, (3) and he has not purchased all of the products he challenges.

If true, Backus does not satisfy Article III standing and his surviving claim must be dismissed. The issue of standing will therefore be held in abeyance pending the results of limited discovery.

### 4. LIMITED DISCOVERY.

Discovery is allowed to test the issue of Article III standing, which is best resolved on a sworn evidentiary record rather than on the pleadings. ConAgra will be entitled to propound **FIVE** requests for production of documents narrowly-tailored to this issue, and Backus must sit for a **ONE-HALF DAY DEPOSITION**, also tailored to this issue. This limited discovery shall be completed by **AUGUST 4, 2016**. Both sides must submit supplemental briefs and evidence explaining the results of this limited discovery by **AUGUST 10 AT NOON**.

At least **THREE DAYS** prior to his deposition, Backus shall sign a sworn declaration setting forth: (1) the approximate dates and quantities of ConAgra's products that he purchased and consumed, (2) the extent to which he has been medically diagnosed with any of the conditions that the complaint alleges are caused by the consumption of artificial trans-fat, and (3) the extent to which he was aware that ConAgra's products contain trans-fat and how much he knew of the dangers of trans-fat before purchasing the products.

### CONCLUSION

For the reasons stated above, this order sets forth **LIMITED DISCOVERY** to determine the issue of standing for plaintiff's sole surviving claim, the "healthy lifestyle" mislabeling claim. As to all other claims, defendant's motion to dismiss is **GRANTED** without leave to amend.

**IT IS SO ORDERED.**

Dated: July 15, 2016.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

12