**McGuireWoods, LLP**

A. Brooks Gresham (SBN 155954)
Laura Coombe (SBN 260663)
1800 Century Park East, 8th Floor
Los Angeles, CA 90067-1501
Telephone: 310.315.8200
Facsimile: 310.315.8210
bgresham@mcguirewoods.com
lcoombe@mcguirewoods.com

Angela M. Spivey (*pro hac vice*)
McGuireWoods LLP
1230 Peachtree Street, NE
Promenade, Suite 2100
Atlanta, GA 30309-3534
Telephone: 404.443.5720
Facsimile: 404.443.5792
aspivey@mcguirewoods.com

*Attorneys for Defendant ConAgra Foods, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| TROY BACKUS, on behalf of himself and all others similarly situated<br><br>Plaintiff,<br><br>vs.<br><br>CONAGRA FOODS, INC.,<br><br>Defendant. | No. 3:16-cv-00454-WHA<br><br>The Hon. William Alsup<br>Dept. 8<br><br>**DEFENDANT CONAGRA FOODS INC.'S[1] OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND MOTION TO STRIKE THE DECLARATIONS OF DR. WONG AND DR. BOWEN** |

[1] On November 15, 2016, ConAgra Foods, Inc. changed its corporate name to Conagra Brands, Inc.

**TABLE OF CONTENTS**

**Page**

STATEMENT OF ISSUES TO BE DECIDED ........ 1

INTRODUCTION ........ 1

STATEMENT OF RELEVANT FACTS ........ 2

A. Fleischmann's ........ 2

B. Plaintiff ........ 4

LEGAL STANDARD ........ 5

ARGUMENT AND CITATION TO AUTHORITY ........ 6

I. No Nationwide Class Can Be Certified Under California Law ........ 6

II. The Proposed Class Is Not Ascertainable ........ 9

III. Plaintiff's Claims Are Not Typical ........ 10

IV. Plaintiff Failed To Demonstrate That Questions Of Law Or Fact Common To The Class Predominate Over Questions Affecting Only Individual Members. ........ 13

A. Individual Issues Predominate Because Plaintiff Cannot Establish Liability By Common Evidence ........ 13

1. Plaintiff Cannot Show That The Label Claim At Issue Is Likely to Deceive Consumers or Is Unlawful ........ 14

2. No Uniform Exposure To The Challenged Label Claim ........ 15

3. Lack of Cohesion ........ 16

4. Plaintiff Is Not Entitled To A Classwide Inference Of Reliance ........ 17

5. Plaintiff's Arguments Regarding Materiality Are Without Merit ........ 18

B. Plaintiff Failed To Identify A Method To Measure Damages On A Classwide Basis ........ 19

1. Plaintiff Failed To Produce A Damages Model That Matches His Theory Of Liability. ........ 20

2. The Court Should Disregard Dr. Wong's "Risk Estimate." ........ 23

V. Plaintiff's Proposed Class Should Not Be Certified Under Rule 23(b)(2) ........ 24

CONCLUSION ........ 25

MOTION TO STRIKE THE DECLARATIONS OF DR. WONG AND DR. BOWEN ........ 25

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Algarin v. Maybelline, LLC*,
300 F.R.D. 444 (S.D. Cal. 2014) ....................25

*Astiana v. Kashi Co.*,
291 F.R.D. 493 (S.D. Cal. 2013) ....................18

*Badella v. Deniro Mktg. LLC*,
No. 10-3908, 2011 U.S. Dist. LEXIS 128145 (N.D. Cal. Nov. 4, 2011) ....................18

*Caldera v. J.M. Smucker Co.*,
No. CV 12-4936, 2014 U.S. Dist. LEXIS 53912 (C.D. Cal. Apr. 15, 2014) ....................21, 22, 23

*Comcast Corp. v. Behrend*,
133 S. Ct. 1426 (2013) .................... *passim*

*Cover v. Windsor Surry Co.*,
No. 14cv5262, 2016 U.S. Dist. LEXIS 16475 (N.D. Cal. Feb. 10, 2016) ....................8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993) ....................21, 25

*Delacruz v. Cytosports, Inc.*,
2012 WL 1215243 (N.D. Cal. Apr. 11, 2012) ....................15, 17

*Dickey v. Advanced Micro Devices, Inc.*,
No. 15-cv-04922, 2016 U.S. Dist. LEXIS 150765 (N.D. Cal. Oct. 31, 2016) ....................17

*Gonzalez v. Proctor & Gamble Co.*,
247 F.R.D. 616 (S.D. Cal. 2007) ....................18

*Granfield v. NVIDIA Corp.*,
No. C. 11 05403 JW, 2012 WL 2847575 (N.D. Cal. Jul. 11, 2012) ....................6

*In re Graphics Processing Units Antitrust Litig.*,
527 F. Supp. 2d 1011 (N.D. Cal. 2007) (Alsup, J.) ....................7

*Guttmann v. LaTapatia Tortilleria, Inc*,
No. 15-CV-020420 SI, 2015 U.S. Dist. LEXIS 156800
(N.D. Cal. Nov. 18, 2015) ....................11

*Guttmann v. Nissin Foods*,
No. C 15-00567 WHA, 2015 WL 4881073 (N.D. Cal. Aug. 14, 2015) ....................13

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) .......... 10, 13

*Harshbarger v. Philip Morris, Inc.*,
No. 02-05267 JSW, 2003 WL 23342396 (N.D. Cal. Apr. 1, 2003) .......... 13

*Haskell v. Time, Inc.*,
965 F. Supp. 1398 (N.D. Cal. 1997) .......... 14

*Hayes v. Wal-Mart Stores, Inc.*,
725 F.3d 349 (3d Cir. 2013) .......... 9

*Hodgers-Durgin v. De La Vina*,
199 F.3d 1037 (9th Cir. 1999) .......... 25

*Hokto Kinoko Co. v. Concord Farms, Inc.*
810 F. Supp. 2d 1013 (C.D. Cal. 2011) .......... 16

*Hoyte v. Yum! Brands, Inc.*,
489 F. Supp. 2d 24 (D.D.C. 2007) .......... 14, 15

*Jones v. ConAgra Foods, Inc.*,
No. C 12-02633 CRB, 2014 U.S. Dist. LEXIS 81292 (N.D. Cal. June 13, 2014), *appeal docketed*, No. 14-16327 (9th Cir. July 15, 2014) .......... *passim*

*Khasin v. R.C. Bigelow, Inc.*,
2016 WL 1213767 (N.D. Cal. Mar. 29, 2016) .......... 14

*Mazza v. Am. Honda Motor. Co., Inc.*,
666 F.3d 581 (9th Cir. 2012) .......... 6, 7, 8

*McLaughlin v. Am. Tobacco, Co.*,
522 F.3d 215 (2d Cir. 2008) .......... 12

*Moheb v. Nutramax Labs, Inc.*,
No. CV 12-3633-JFW, 2012 U.S. Dist. LEXIS 167330 (C.D. Cal. Sept. 4, 2012) .......... 16

*In re NJOY Consumer Class Action Litig.*,
120 F. Supp. 3d 1050 (C.D. Cal. 2015) .......... 15

*Ogden v. Bumble Bee Foods*,
LLC, No. 5:12-CV-01828, 2014 U.S. Dist. LEXIS 565 (N.D. Cal. Jan. 2, 2014) .......... 22

*Ortega v. Natural Balance, Inc.*,
No. CV-13-05942, 2013 U.S. Dist. LEXIS 176437 (C.D. Cal. Dec. 13, 2013) .......... 6

*Pecover v. Elec. Arts, Inc.*,
No. C 08-2820, 2010 U.S. Dist. LEXIS 140632 (N.D. Cal. Dec. 21, 2010) .......... 7

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) ....................6, 7

*Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*,
No. CV 14-7242-DMG, 2016 U.S. Dist. LEXIS 149847 ....................16, 17

*Prohias v. Pfizer, Inc.*,
485 F. Supp. 2d 1329 (S.D. Fla. 2007)....................11

*Red v. Kraft Foods, Inc.*,
No. CV 10-1028-GW, 2011 U.S. Dist. LEXIS 116965 (C.D. Cal. Sept. 29, 2011)....................12, 18

*Rosebrock v. Mathis*,
745 F.3d 963 (9th Cir. 2014)....................24

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011)....................9, 16, 19

*Tomek v. Apple, Inc.*,
636 F. App'x 712 (9th Cir. 2016)....................12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ....................5, 6, 24

*Werdebaugh v. Blue Diamond Growers*,
No. 12-CV-2724, 2014 U.S. Dist. LEXIS 71575 (N.D. Cal. May 23, 2014) ....................21

*Wiener v. The Dannon Company, Inc.*,
255 F.R.D. 658 (C.D. Cal. 2009) ....................16

*Williams v. Gerber Prods. Co.*,
552 F.3d 934 (9th Cir. 2008)....................14

*Wolin v. Jaguar Land Rover N. Am. LLC*,
617 F.3d 1168 (9th Cir. 2010)....................10

*Wolph v. Acer Am. Corp.*,
272 F.R.D. 477 (N.D. Cal. 2011) ....................9

*Young v. Johns & Johnson*,
2012 WL 1372286 (D. N.J. Apr. 19, 2012) ....................14

**California Cases**

*Caro v. Procter & Gamble Co.*,
18 Cal. App. 4th 644 (Cal. Ct. App. 1993) ....................19

*Davis-Miller v. Auto. Club of S. Cal.*,
201 Cal. App. 4th 106 (Cal. Ct. App. 2011) ....................15

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
810 F. Supp. 2d 1013 (C.D. Cal. 2011)....................16

*Miller v. Lakeside Vill. Condo Assoc., Inc.*,
1 Cal. App. 4th 1611 (Cal. Ct. App. 1991)....................13

*Oakland Raiders v. Oakland-Alameda Cnty. Coliseum, Inc.*,
51 Cal. Rptr. 3d 144 (Cal. Ct. App. 2006)....................11

*Pfizer v. Superior Court*,
182 Cal. App. 4th 622 (2010)....................15

*Potter v. Firestone Tire & Rubber Co.*,
6 Cal. 4th 965 (1993)....................23

*Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*,
96 Cal. App. 4th 884 (Cal. Ct. App. 2002)....................13

*In re Tobacco Cases II*,
240 Cal. App. 4th 779 (Cal. Ct. App. 2015)....................21

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (Cal. Ct. App. 2009)....................21

*Wash. Mut. Bank, FA, v. Super. Ct. of Orange Cnty*,
15 P.3d 1071 (Cal. 2001)....................7

**California Statutes**

Cal. Bus. & Prof. Code
§ 17208....................1

Cal. Com. Code
§ 2725....................1

Consolidated Appropriations Act....................4

**Other Authorities**

21 C.F.R. § 101.62....................3

21 C.F.R. § 101.65....................15

Fed. R. Evid. 702....................21, 25

Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650-
01 (June 17, 2015)....................4

H.R. 2029....................4, 5

Rule 23 .......... *passim*

## STATEMENT OF ISSUES TO BE DECIDED

Plaintiff claims that the labels of two Fleischmann's products – Original Sticks and Unsalted Sticks ("Products at Issue") – are deceptive and misleading because they contained trans fat and state on the back label "The delicious taste of Fleischmann's enhances your favorite foods while maintaining your healthy lifestyle." Has Plaintiff satisfied the requirements for class certification for the alleged class period of January 1, 2008[2] to present for either a national class or a California-only class?

## INTRODUCTION

Plaintiff's proposed class actions cannot be certified for the simple reason that his Motion for Class Certification relies on mere *ipse dixit* assertions that the elements of Rule 23 have been met and provides no support for these assertions beyond promises to be able to provide evidentiary support in the future. It is well-settled that this is insufficient. *See Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1434 (2013). In particular, Plaintiff's motion fails for at least six reasons.

***First***, no nationwide class can be certified under California law. The vast majority of the Products at Issue were manufactured in Indiana, and ***neither*** of those products are currently manufactured in California. Moreover, ConAgra sells more of the Products at Issue in at least eight states than it does in California. Simply put, Plaintiff provides no basis to apply California law extraterritorially to the product sales that occurred all over the nation.

***Second***, the proposed class is not ascertainable. Plaintiff fails to explain, much less prove, how the Court can ascertain the members of his proposed class of purchasers going back to 2008. This failure is especially glaring given that numerous Fleischmann's products similar to the Products at Issue exist, yet are excluded from the proposed class. In addition, the Products at Issue did not contain the label claim at issue for the entire class period. Thus, class members must

---

[2] Plaintiff attempts to argue that the class period dates back to January 1, 2008. But this is incorrect. It is well-established these types of class claims can only date back four years from the time the original class action complained was filed. *See, e.g.*, Cal. Bus. & Prof. Code § 17208 (four-year statute of limitation for UCL claims); Cal. Com. Code § 2725 (four-year statute of limitation for breach of warranty claims). Plaintiff here filed his first complaint in this action on January 26, 2016. Thus, the start of any potential class period would be January 26, 2012.

rely on their subjective memory of specific product purchases over the course of eight years to justify membership in this proposed class rather than objective criteria.

***Third***, Plaintiff is not typical of proposed class members. Instead, Plaintiff is a professional plaintiff subject to numerous individualized defenses, including lack of reliance, a statute of limitations defense, and no injury, among others. A class representative who is subject to individualized defenses cannot meet the typicality requirement of Rule 23.

***Fourth***, common issues of law and fact virtually do not exist, much less predominate. Plaintiff has brought forth no evidence that the label claim at issue is likely to deceive consumers. Indeed, there has been no uniform exposure to the label claim since it is on the products' back labels, and there is a lack of class cohesion because consumers' understanding of the label claim will vary. As a result, Plaintiff is not entitled to a classwide inference of reliance.

***Fifth***, Plaintiff fails to present a damages model that matches his liability theories under *Comcast*. Plaintiff merely promises to provide a damages model based on undefined "restitution" gleaned from ConAgra sales records in the future. This fails to demonstrate that Plaintiff can measure the damages attributable to ConAgra's alleged wrongful conduct. Courts routinely deny class certification where, as here, the plaintiff fails to articulate such a damages model.

***Sixth***, Plaintiff's proposed class cannot be certified under Rule 23(b)(2). Not only do the Products at Issue no longer contain any PHOs, but Plaintiff lacks standing to seek injunctive relief. He is now aware of the alleged "deception," and there is no "likelihood of future injury."

For all of these reasons, Plaintiff's motion for class certification should be denied.

## <u>STATEMENT OF RELEVANT FACTS</u>

### A. Fleischmann's

***The Labels and Label Changes.*** [redacted]

[redacted]

***Ingredient Change***. [redacted]

***Trans Fat***. [redacted])

***Manufacturing***. [redacted]

***Sales***. [redacted]

[redacted]

***Consumers***. Consumers make purchases for different and competing reasons, and this is no different in the food industry. For example, [redacted]

In addition, [redacted]

***FDA.*** On June 17, 2015, FDA published its final determination that, although PHO is no longer Generally Recognized as Safe, it may be used in food products until June 18, 2018. Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34650-01 (June 17, 2015). On December 18, 2015, President Obama signed into law the Consolidated Appropriations Act for 2016 (H.R. 2029), (hereinafter "CAA"), expressly precluding suits based on PHO usage.

**B. <u>Plaintiff</u>**

As with many consumers, Plaintiff factored a variety of considerations into his decision to purchase margarine. He began to purchase Fleischmann's margarine products in the 1990s. (Coombe Decl. ¶ 4, Ex. A, Backus Dep. 64:7-17, Aug. 2, 2016 ("Backus Dep.").) Plaintiff considered packaging, taste, price, and convenience at different times. (*Id*. at 88:20.) He preferred Fleischmann's taste, but price considerations sometimes prevailed; in those instances, he would purchase a cheaper, alternative margarine. (*Id*. at 88:21-23, 89:2-5.) On other occasions, if he saw the flavor and size margarine that he wanted, he bought that product because it was most

convenient. (*Id*. at 89:11-15.) Based on these considerations, Plaintiff used at least five different margarine brands—including Fleischmann's—between the late 1990s and today. (*Id*. at 92:24.)

Plaintiff purchased both Fleischmann's spreads and sticks, including original and unsalted flavors. (*Id*. at 61:4-9.) Plaintiff claims the Fleischmann's labels offered statements about maintaining a healthy lifestyle, which he considered while shopping. (*Id*. at 78:21-23.) [redacted] At his deposition, Plaintiff produced no receipts for the Products at Issue. (Backus Dep. 50:4-51:21.)

Plaintiff seeks damages claiming that prolonged exposure to trans fats puts him at a higher risk for certain health problems. Despite his belief as early as the late 1990s that trans fats were bad, he continued to buy products containing trans fat through the class period, which begins in 2008. (*Id*. at 101:15-19, 111:15-20.) Indeed, Plaintiff testified that as of April 30, 2015, when he filed a similar lawsuit against Nestle, he believed there was no safe level of artificial trans fat intake, and was aware of the alleged health problems that consumption of trans fat could cause. (*Id*. at 130:4-15, 131:2-5, 132:19-133:3-15.) Nonetheless, Plaintiff continued to purchase and use the Products at Issue through October of 2015. (*Id*. at 134:9-25, 135:3-7.)

Plaintiff believes that trans fats increase his risk of heart disease, cancer, and diabetes; damage his organs; change his cells; harm his immune system; and shorten his longevity. (*Id*. at 41:20-23.) Plaintiff does not currently have any of those health problems nor has a doctor told him that he was at an increased risk for them. (*Id*. at 42:11-14.)

## <u>LEGAL STANDARD</u>

"The class action is an 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). Departure from the usual rule requires that a putative class representative "affirmatively demonstrate" that he or she has met all of the requirements of Rule 23 and is entitled to carry on litigation on a representative basis. *Comcast Corp.*, 133 S.Ct. at 1432. Plaintiff must satisfy these requirements through evidentiary proof. This requires Plaintiff to do more than generate common

questions; Plaintiff must also show that litigation will produce a classwide answer to the common question. *Wal-Mart*, 564 U.S. at 350. Plaintiff has not met this burden.

**ARGUMENT AND CITATION TO AUTHORITY**

**I. No Nationwide Class Can Be Certified Under California Law**

Plaintiff moves to certify a nationwide class asserting claims under California law. In so doing, Plaintiff alleges that California's consumer protection statutes apply to the claims of, for instance, a Rhode Island resident who purchased the product at issue in Rhode Island in alleged reliance on the "healthy lifestyle" label claim. This violates choice of law principles.

"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Mazza v. Am. Honda Motor. Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012). Under California's choice of law rules, there is a presumption that California state laws do not apply extraterritorially to non-California residents. *Ortega v. Natural Balance, Inc.*, No. CV-13-05942, 2013 U.S. Dist. LEXIS 176437, at * 12-13 (C.D. Cal. Dec. 13, 2013). Accordingly, the Ninth Circuit has held that "[e]ach class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza*, 666 F.3d at 594.[3]

Here, Plaintiff does not allege that any of the purchases by California non-residents took place in California. The Court "may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement[s]" for class certification. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821 (1985). Nevertheless, Plaintiff argues that this case is the exception to the general rule and that California law applies to the claims of the national class.

Plaintiff's argument fails for two primary reasons: (1) California does not have significant contacts to the claims of each class member; and (2) even if there were sufficient contacts, the

---

[3] Yet another reason why Plaintiff's request for a nationwide class should be denied is that he does not have a class representative for each state. *See Granfield v. NVIDIA Corp.*, No. C. 11 05403 JW, 2012 WL 2847575, at *4 (N.D. Cal. Jul. 11, 2012) ("Where…a representative plaintiff is lacking for a particular state, all claims based on *that* state's law are subject to dismissal.").

interests of other states outweigh California's interest. As this Court has previously held, "[i]t is hard to see why laws of other states should be tossed overboard and their residents remitted to California law for transactions that, for individual consumers, are local in nature." *In re Graphics Processing Units Antitrust Litig.*, 527 F. Supp. 2d 1011, 1028 (N.D. Cal. 2007) (Alsup, J.).

In order to apply California law and not exceed constitutional limits, California "must have a significant contact or significant aggregation of contacts to the claims asserted by each member of the plaintiff class…to ensure that the choice of [California] law is not arbitrary or unfair." *Shutts*, 472 U.S. at 821-22 (internal quotations and citations omitted); *see also Wash. Mut. Bank, FA, v. Super. Ct. of Orange Cnty*, 15 P.3d 1071, 1082 (Cal. 2001). Plaintiff bears the burden of establishing significant contact with the forum state. *Mazza*, 666 F.3d at 589. Here, Plaintiff fails to meet that burden for at least two reasons.

***Significant Contacts.*** First, as Plaintiff acknowledges, this analysis focuses on both the plaintiff's and defendant's contact with the forum state. *Pecover v. Elec. Arts, Inc.*, No. C 08-2820, 2010 U.S. Dist. LEXIS 140632, at *48 (N.D. Cal. Dec. 21, 2010); (Doc. 59 at 17). However, noticeably absent from Plaintiff's argument is any discussion of the non-resident putative class members' contact(s) with California—these class members have no contact with the forum state as their purchases giving rise to their alleged claims occurred in their respective states, not California. (*See* Doc. 59 at 18.) Rather, Plaintiff's memorandum focuses on the named representative who is a California resident and made purchases in California; it is not disputed that California law applies to his claims. (*Id.*)

Second, with respect to ConAgra's contacts with California, Plaintiff speculates solely based on the state population that California has more Fleischmann's sales than any other state. (*Id.*) [redacted]

***Interests of Other States Outweigh California's Interest.*** Even if Plaintiff were able to show significant contacts, the interests of other states would outweigh California's interest in applying its law. In determining whether the interests of other states outweigh California's interest, courts apply the three-step governmental interest test. *Mazza*, 666 F.3d at 590. This requires the Court to first determine whether relevant law from each respective jurisdiction materially differs from California in that it would make a difference in the litigation. *Id.* If it does, then the Court must examine each jurisdiction's interest in the application of its own laws. *Id.* at 591-93. Finally, the Court must weigh the interests of each jurisdiction to determine which state's interest would be the most impaired if its law was not applied. *Id.* at 593-94.

Here, California's consumer protection laws differ from those of other states. For a sample of some of these differences, see Coombe Decl., Ex. B. In addition, "[e]very state has an interest in having its law applied to its resident claimants." *Mazza*, 666 at 591-92. Likewise, California law recognizes that a state usually has "the predominant interest" in regulating conduct that occurs within its state. *Id.* at 592. The sale of the Fleischmann's products giving rise to non-California residents' claims occurred in 49 other states, and the District of Columbia. "[E]ach state has a strong interest in applying its own consumer protection laws to those transactions." *Id.* However, in examining the interests of the other jurisdictions, Plaintiff argues that there is no true conflict where California's consumer protection laws are more generous than other counterparts, because "foreign states have no legitimate interest in denying higher recoveries to their residents." (Doc. 59 at 19.) However, this precise argument was rejected by the Ninth Circuit in *Mazza*. *See Mazza*, 666 F.3d at 592; *see also Cover v. Windsor Surry Co.*, No. 14cv5262, 2016 U.S. Dist. LEXIS 16475, at *21-22 (N.D. Cal. Feb. 10, 2016).

Because California consumer protection statutes cannot be applied to a nationwide class and the law of multiple jurisdictions would instead apply, common issues of law would necessarily not predominate. This is due to the variances in state law discussed above that would overwhelm common issues and "preclude predominance for a single nationwide class." *See Mazza*, 666 F.3d at 596. Plaintiff has presented nothing demonstrating otherwise. Nor has Plaintiff offered anything sufficient to enable the Court to assess how such state law differences

could be efficiently managed at trial. Because Plaintiff has failed to carry this burden, certification of any national class should be denied.

## II. The Proposed Class Is Not Ascertainable

"As a threshold matter …, the party seeking class certification must [also] demonstrate that an identifiable and ascertainable class exists." *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 482 (N.D. Cal. 2011). Indeed, "there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013).

Plaintiff asserts that the class is ascertainable because class members "can be ascertained by reference to objective criteria" and "there is no concern that the class includes individuals who were not exposed to the misrepresentation." (Doc. 59 at 17.) Plaintiff is incorrect. To the contrary, ascertaining class membership is not feasible because it will be difficult to determine who actually saw the challenged claim on the Products at Issue for at least two reasons.

***First***, the challenged claim is on the back of the product. As discussed in more detail in Section IV.A.1.a., when the challenged statements are on the back of the products, some class members will never have seen them. *See, e.g., Jones v. ConAgra Foods, Inc.*, No. C 12-02633 CRB, 2014 U.S. Dist. LEXIS 81292, at * 67 (N.D. Cal. June 13, 2014), *appeal docketed*, No. 14-16327 (9th Cir. July 15, 2014). Therefore, the proposed class may include members who were not even exposed to the challenged label claim. Where a class includes injured and uninjured consumers, the Ninth Circuit has held that class certification should be denied. *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1024 (9th Cir. 2011).

***Second***, there are seven varieties of Fleischmann products, and only two contain the challenged claim. (Doc. 51-3 at ¶¶ 3-4.) [redacted] Thus, even though the proposed class definition only includes purchasers of the

Products at Issue containing the challenged label claim, given the number of varieties and label changes, "it is hard to imagine that [putative class members] would be able to remember which particular [Fleischmann] product[] they purchased from 2008 to present, and whether those products bore the challenged label statements." *Jones*, 2014 U.S. Dist. LEXIS 81292, at *35 (finding class unascertainable because self-identification was unfeasible given the different varieties of the product, some of which did not contain the challenged statements). "The memory problem is compounded by incentives individuals would have to associate with a successful class or dissociate from an unsuccessful one." *Xavier*, 787 F. Supp. 2d at 1090. Here, consumers who purchased the Products at Issue in 2008, 2014, or 2016 likely would not know whether they bought one of the Products at Issue containing PHOs and with the "healthy lifestyle" claim unless they kept the packaging. For these reasons, the class is unascertainable.

**III. Plaintiff's Claims Are Not Typical**

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to named plaintiffs, and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am. LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010). Furthermore, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Here, Plaintiff is subject to at least three unique defenses.

***No reliance***. Plaintiff has testified that he began purchasing the Products at Issue in the 1990s. (Backus Dep. 64:7-17.) This means that when he first started purchasing the Products at Issue, the "healthy lifestyle" claim did not appear on the labels of the Products at Issue. [redacted]. Thus, Plaintiff purchased the Products at Issue for many years, perhaps even a decade, ***before*** the label claim at issue even appeared on the labels. Likewise, Plaintiff has purchased a number of other Fleischmann's products that never contained the "healthy lifestyle" claim for decades. (Doc. 51-3 ¶¶ 3-4; Doc. 51-4 ¶ 2.) Any argument that he relied on the "healthy lifestyle" claim when

purchasing the Products at Issue after having purchased Fleischmann's products without the claim for many years is simply without merit.

Furthermore, to date, Plaintiff has filed five lawsuits relating to PHOs and trans fat, with the first case being filed on April 30, 2015. (Doc. 51 at 8.) Plaintiff confirmed under oath that at the time he filed each lawsuit he understood the allegations of the complaints and the alleged dangers of trans fat. (*See* Backus Dep. 130:4-15, 131:2-5, 133:4-15, 136:20-137:2, 139:17-24, 140:7-12.) In sum, he alleged that trans fat is a "toxin and carcinogen" for which there is "no safe level" and that the food products that contain them are unfit for human consumption. (*See* Doc. 35 ¶¶ 6, 21, 27-58, 127.) Plaintiff testified that as of April 30, 2015, when he filed a similar lawsuit against Nestle, he believed there was no safe level of artificial trans fat intake. (Backus Dep. 130:4-15, 131:2-5, 133:4-15.) Despite this, Plaintiff continued to purchase and use Fleischmann's products that he knew contained trans fat through October of 2015 – an additional six months. (*See id.* at 134:9-25, 135: 3-7.) Plaintiff's continued use of the products even after being fully aware of the alleged dangers severely undermines any allegations of actual reliance and injury.

Indeed, a number of courts have held that a plaintiff cannot establish the necessary link between the alleged misrepresentation or deception and their injuries if he or she continued to purchase the product after learning the "truth." *See, e.g., Prohias v. Pfizer, Inc.*, 485 F. Supp. 2d 1329, 1335-36 (S.D. Fla. 2007) (finding that plaintiffs were not injured by allegedly misleading advertisement because despite claims that they would not have purchased Lipitor had they known its lack of coronary benefits, they continued purchasing the drug after discovering the truth); *Oakland Raiders v. Oakland-Alameda Cnty. Coliseum, Inc.*, 51 Cal. Rptr. 3d 144, 151 (Cal. Ct. App. 2006) (similar). In *Guttmann v. LaTapatia Tortilleria, Inc,* No. 15-CV-020420 SI, 2015 U.S. Dist. LEXIS 156800 (N.D. Cal. Nov. 18, 2015), this Court concluded that given the plaintiff's "extensive knowledge of trans-fats, the dangers of PHO, the FDA's labeling requirements, and the label practices of manufacturers," he could not plausibly claim that he relied on La Tapatia's 0g Trans Fat label when he purchased the tortillas. *Id.* at *9-10. The same reasoning applies here.

Plaintiff could not have reasonably relied on the "healthy lifestyle" claim. He continued to purchase and consume the Fleischmann's products that he knew contained trans fat and alleged

were unfit for human consumption. The continued purchases and consumption indicate Plaintiff did not actually rely on the alleged misrepresentation and purchased the products for a reason other than the alleged deception. *McLaughlin v. Am. Tobacco, Co.*, 522 F.3d 215, 226 (2d Cir. 2008). Indeed, courts have found that the named plaintiffs' continued purchase of the product at issue would have "almost certainly destroyed the ability of the class to ever establish reliance and/or materiality of the alleged misrepresentations." *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW, 2011 U.S. Dist. LEXIS 116965, at *33-34 (C.D. Cal. Sept. 29, 2011). Put simply, it is not plausible that Plaintiff purchased the Products at Issue for several reasons prior to 2008 (none of which be a "healthy lifestyle" claim, because that did not appear on the product labels); continued purchasing them between 2008 and April 2015 solely because of the "healthy lifestyle" claim (which appeared on the labels during part of this time period); and then purchased the products for a new reason after commencing the Nestle litigation and claiming to be fully aware of the alleged adverse health consequences associated with PHOs and consumption of trans fat. His claim that he relied upon the "healthy lifestyle" claim in purchasing the Products at Issue is not plausible.

***No injury***. Plaintiff did not suffer the same or similar injury as other class members. Rather, the record establishes that Plaintiff is a professional plaintiff who did not rely on the "healthy lifestyles claim," and therefore suffered no injury as a result. In fact, Plaintiff admits that as early as the late 1990s, he believed that trans fat was a bad fat and might have some health consequences. (Backus Dep. 100:18-22, 101:15-19 ("[S]tarting in the late '90s/early 2000s, for example, I had heard, you know, trans fat might be—have some health—be bad or have some health consequences…").) Plaintiff further acknowledges he knew some of the Fleischmann's products he purchased often contained trans fat, because the products' packaging listed partially hydrogenated soybean oil in the ingredient list and also disclosed 1.5g of trans fat per serving. (*Id.* at 53:25-54:6, 98:3-13, 106:24-107:3, 119:22-120:11.) Plaintiff thus concedes that he believed the consumption of trans fat was not "healthy" and that the Products at Issue contained trans fat, but purchased them anyway. This necessarily means Plaintiff suffered no injury if he purchased the Products at Issue with full knowledge as to what he was purchasing. *See, e.g., Tomek v. Apple,*

*Inc.*, 636 F. App'x 712, 713 (9th Cir. 2016); *Guttmann v. Nissin Foods*, No. C 15-00567 WHA, 2015 WL 4881073, *2 (N.D. Cal. Aug. 14, 2015).

***Statute of limitations***. In addition, Plaintiff is subject to a statute of limitations defense for his UCL claim. For the UCL claim, it is well-settled that the statute of limitations begins to run at the time of injury—regardless of notice—unless a plaintiff can establish equitable tolling. *See Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson*, 96 Cal. App. 4th 884, 891 (Cal. Ct. App. 2002). California follows the "single injury" rule. *Miller v. Lakeside Vill. Condo Assoc., Inc.*, 1 Cal. App. 4th 1611, 1622 (Cal. Ct. App. 1991). Thus, once the cause of action first accrues for a purchaser of Fleischmann's, the limitations clock began to run for all purchases made by that claimant. *See, e.g.*, *Harshbarger v. Philip Morris, Inc.*, No. 02-05267 JSW, 2003 WL 23342396, *6-*7 (N.D. Cal. Apr. 1, 2003). Here, Plaintiff has testified that he first started buying the Products at Issue in the 1990s. (Backus Dep. 64:7-17.) When the claim at issue first appeared on the products in 2008, Plaintiff continued to purchase them. Thus, the statute of limitations on his UCL claim would have begun to run in 2008, and would bar his claim.

"Because of [Plaintiff]'s unique situation, it is predictable that a major focus of the litigation will be on a defense [which is] unique to him. Thus, [Plaintiff] fails to satisfy the typicality requirement of Rule 23(a) [for this reason as well]." *Hanon*, 976 F.2d at 509.

## IV. Plaintiff Failed To Demonstrate That Questions Of Law Or Fact Common To The Class Predominate Over Questions Affecting Only Individual Members.[4]

### A. Individual Issues Predominate Because Plaintiff Cannot Establish Liability By Common Evidence

Plaintiff's argument that liability can be established through common evidence is unavailing. This is because Plaintiff cannot establish the elements of the asserted causes of action with common proof for the reasons discussed below.

[4] For many of these same reasons, Plaintiff's Motion fails to demonstrate commonality.

**1. Plaintiff Cannot Show That The Label Claim At Issue Is Likely to Deceive Consumers or Is Unlawful**

It is well-settled that under the reasonable consumer test, which Plaintiff contends is applicable here, Plaintiff is required to provide extrinsic evidence that the label claim at issue is likely to deceive consumers. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *Khasin v. R.C. Bigelow, Inc.*, 2016 WL 1213767, at *5 (N.D. Cal. Mar. 29, 2016); *see also Haskell v. Time, Inc.*, 965 F. Supp. 1398, 1407 (N.D. Cal. 1997) ("[A]necdotal evidence alone is insufficient to prove that the public is likely to be misled."). Yet Plaintiff does not do so. This is for a good reason – he cannot. Multiple courts have previously analyzed whether a label claim of "healthy" or "a healthy lifestyle" can be deceptive, and they have held that this type of claim in this context cannot be deceptive.

For instance, in *Hoyte v. Yum! Brands, Inc*., 489 F. Supp. 2d 24 (D.D.C. 2007), the plaintiff's allegation was that a claim that "KFC products are part of a nutritionally healthy lifestyle" was a misrepresentation because KFC products contain trans fat. *Id*. at 26. But the Court held that this claim was non-actionable because "the statement … does not necessarily suggest that trans fats are healthy" and there is "nothing suggesting how frequently one should eat KFC in order to incorporate it into a healthy lifestyle." *Id*. at 30. The Court concluded that "[n]o conceivable reading of this language could trigger liability for negligent misrepresentation." *Id*. This result is almost directly on point to the facts of this case.

Other courts have also declined to find that a "healthy lifestyle" claim is deceptive. In *Young v. Johns & Johnson*, 2012 WL 1372286 (D. N.J. Apr. 19, 2012), a plaintiff alleged that a butter/margarine substitute that claimed to be "Part of a Healthy Lifestyle" was deceptive because it contained trans fat. *Id*. at *1. The Court held that plaintiff's complaint in that case "amount[ed] to no more than subjective allegations that the presence of any amount of trans fat and partially hydrogenated oils renders" the defendants' claims misleading and the product at issue unhealthy. *Id*. at *4. The Court found that such allegations were insufficient to show injury-in-fact, in part because the plaintiff failed to allege any adverse health effects and because the packaging indicated that trans fat was present. *Id*. at *3. The facts in *Young* are also similar to the facts here.

Still other courts have remarked on how "the term 'healthy' is difficult to define." *Delacruz v. Cytosports, Inc.*, 2012 WL 1215243, at *6 (N.D. Cal. Apr. 11, 2012). Dr. Barbara Petersen confirms this, explaining that there is no single, universally accepted definition of "healthy lifestyle." (Petersen Decl., ¶ 8.) She notes that there are many factors that go into a healthy lifestyle. (*Id*.) She also explains that she believes that moderate consumption of the Products at Issue can be consistent with a "healthy lifestyle," given its lower saturated fat and cholesterol as compared to butter. (*Id*. ¶ 10.) This is yet another reason why Plaintiff cannot show that the label claim is likely to deceive consumers.

With regard to Plaintiff's argument that the labels are unlawful pursuant to 21 C.F.R. § 101.65, this is incorrect. In order to fall under this regulation, the claim at issue must be "made in connection with an explicit or implicit claim or statement about a nutrient." *Id*. § d.1.ii. The label claim at issue here makes no such claim or statement about a nutrient related to "healthy lifestyle." This is consistent with *Hoyte* (discussed above). Furthermore, Dr. Petersen also explains that this label claim would not be considered a nutrient content claim under the FDA regulations. (Petersen Decl. ¶ 6.) In short, Plaintiff has failed to demonstrate that the "healthy lifestyle" label claim at issue is either deceptive or unlawful. This is fatal to Plaintiff's Motion.

**2. No Uniform Exposure To The Challenged Label Claim**

The reasonable consumer standard can only apply where all proposed class members were actually exposed to the "healthy lifestyle" claim. *See Davis-Miller v. Auto. Club of S. Cal.*, 201 Cal. App. 4th 106, 124 (Cal. Ct. App. 2011); *Pfizer v. Superior Court*, 182 Cal. App. 4th 622, 631-32 (2010); *In re NJOY Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1104 (C.D. Cal. 2015). Here, all proposed class members were not exposed to the "healthy lifestyle" claim even though the class is limited to consumers who purchased the products with the challenged claim. It is undisputed that the "healthy lifestyle" claim appeared on the back of the product. Doc. 51-3 at 6-9. Courts, including this court, have concluded that that when the challenged statements are on the back of the product, some class members will never have seen them. *See, e.g., Jones*, 2014 U.S. Dist. LEXIS 81292, at * 67 ("Although the class is limited to Swiss Miss products that included antioxidant statements, some class members will never have seen the challenged

statements (because the statements were on the top or back of the product, for example)….”). Similarly in *Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013 (C.D. Cal. 2011), the district court held that “[a] reasonably prudent consumer may not carefully inspect the back label of a package” when purchasing an inexpensive product like the one here. *Id*. at 1030.

Under these circumstances, Plaintiff’s allegations that a class of consumers was exposed to the label claim does not allow an inference of liability. Where the challenged label statement does not prominently appear on the product, proponents of certification must do more to establish that all of the proposed class members were actually exposed to the challenged claim.[5] As a result, individualized inquires will be required to determine if class members actually saw the challenged label claim. *See Moheb v. Nutramax Labs, Inc.*, No. CV 12-3633-JFW, 2012 U.S. Dist. LEXIS 167330, at *20-21 (C.D. Cal. Sept. 4, 2012) (“Plaintiff cannot demonstrate that common issues predominate because some of the members of the [c]lass never saw or relied upon Defendant’s representations….”). This alone is fatal to Plaintiff’s motion for class certification.

**3. Lack of Cohesion**

Additionally, Plaintiff’s claims cannot be established by common evidence because there is a lack of “cohesion” among the class members. *See Stearns*, 655 F.3d at 1020. Accordingly, even where the challenged representations were uniform throughout the proposed class period, unlike here, district courts have found a lack of cohesion where consumers’ understanding of the representations varied. For example, in *Jones*, plaintiffs challenged a 100% natural claim. The *Jones* court concluded that because there was “no fixed meaning for the word ‘natural,’” there was a lack of cohesion which would result in individual inquires predominating over common ones. 2014 U.S. Dist. LEXIS 81292, at * 54, 63. The court reached a similar conclusion in *Pierce-Nunes v. Toshiba Am. Info. Sys., Inc.*, No. CV 14-7242-DMG, 2016 U.S. Dist. LEXIS 149847, at (C.D. Cal. June 23, 2016). There, the plaintiff challenged “the very name of the product itself—

[5] For this reason, the instant case is distinguishable from *Wiener v. The Dannon Company, Inc.*, 255 F.R.D. 658, 669 (C.D. Cal. 2009), where it was uncontested that “Dannon’s alleged misrepresentations regarding the clinically proven health benefits of the Products [were] prominently displayed on all of the Products’ packaging.”

LED TV" and contended that common issues predominate because class members' exposure to the challenge deception was apparent. *Id.* at *20-21. The court disagreed, stating that "assuming that each class member may have been exposed to the LED TV label, [plaintiff] will not be able to demonstrate with common proof, even under a reasonable consumer standard, that each class member had the same understanding of the product labeling, let alone relied on the LED TV label when purchasing a Toshiba-brand LED-lit LCD TV." *Id*.

Plaintiff must sufficiently show that the "healthy lifestyle" claim has a uniform definition or understanding among class members. He has not done so, and in fact has brought forth no evidence at all regarding consumers' understanding of "healthy lifestyle." This is because there is no uniform understanding of "healthy lifestyle" or that such a claim means that the product does not contain any artificial trans fat or PHOs. Indeed, courts have repeatedly noted that "the term 'healthy' is difficult to define." *Delacruz*, 2012 U.S. Dist. LEXIS 51094, at *17; (Petersen Decl. ¶ 8). Moreover, much like the plaintiffs in *Pierce-Nunes*, consumers' understanding of the "healthy lifestyle" label claim will vary because they have likely learned about trans fat and PHOs through many different avenues, including physicians, public health agencies, the media, and the internet. This too is fatal to Plaintiff's Motion.

**4. Plaintiff Is Not Entitled To A Classwide Inference Of Reliance**

Next, Plaintiff argues that his CLRA and breach of express warranty claims can be established by common evidence. (Doc. 59 at 14-15.) This argument fails as well.

It is well-established that that reliance is an element of both of these claims. *See Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04922, 2016 U.S. Dist. LEXIS 150765, at *25-26 (N.D. Cal. Oct. 31, 2016). Plaintiff contends that an inference of reliance arises as to the entire class. Doc. 59 at 14-15. However, such an inference is only permitted if Plaintiff demonstrates that the alleged misrepresentation has been made to the entire class and that it is material. *Jones*, 2014 U.S. Dist. LEXIS 81292, at *54-*56. Materiality "is judged by a 'reasonable man' standard," such that "a misrepresentation is deemed material if a reasonable would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question." *Steroid Hormone Prod. Cases*, 104 Cal. Rptr. 3d 329, 338 (Cal. Ct. App. 2010).

For many of the same reasons that Plaintiff cannot prove his claims by common evidence, Plaintiff also fails to establish that he is entitled to an inference of class-wide reliance. First, where, as here, members of the proposed class may not have ever been exposed to or relied upon the alleged misrepresentation, an inference of reliance is not appropriate. *See Gonzalez v. Proctor & Gamble Co.*, 247 F.R.D. 616, 623 (S.D. Cal. 2007). An inference is also not available here because there is no uniform understanding of "healthy lifestyle" claim, as discussed in more detail in Section IV.A.3. *See Astiana v. Kashi Co.*, 291 F.R.D. 493, 508 (S.D. Cal. 2013); *Jones*, 2014 U.S. Dist. LEXIS 81292, at *59-60.

In his Trial Plan, Plaintiff contends that he is entitled to an inference of reliance because his acts were consistent with his reliance on the alleged misrepresentation—the "healthy lifestyle" claim. (Doc. 59-5.) However, the record belies Plaintiff's contention as discussed in more detail in Section III. For instance, Plaintiff admittedly continued to consume the Products at Issue after being fully aware of the alleged dangers. This fact alone is fatal to "the ability of the class to ever establish reliance and/or materiality of the alleged misrepresentations." *See Red*, 2011 U.S. Dist. LEXIS 116965, at * 33-34.

**5. Plaintiff's Arguments Regarding Materiality Are Without Merit**

Plaintiff's efforts to establish materiality by common proof likewise fail. Although "materiality is an objective standard," Plaintiff still "need[s] to point to some type of common proof." *Badella v. Deniro Mktg. LLC*, No. 10-3908, 2011 U.S. Dist. LEXIS 128145, at *25 (N.D. Cal. Nov. 4, 2011). Initially, Plaintiff argues that materiality is established because a manufacturer would not include an "immaterial" statement on its label. (Doc. 59 at 3-4.) This Court previously rejected a similar argument in *Jones* where the plaintiffs argued that "defendant must believe that the statements are material or it would not have included them on its labels;" the Court held this was too "weak" to establish materiality. 2014 U.S. Dist. LEXIS 81292, at * 56.

Plaintiff indicates in his Trial Plan that he will "demonstrate materiality through ConAgra documents showing that health and wellness attributes are important to consumers in choosing which products to purchase …." (Doc. 59-5 at 2; *see also* Doc. 59 at 4.) This, too, misses the mark. ConAgra documents showing that health and wellness attributes may be a consideration for

consumers of all Fleischmann's products (rather than the Products at Issue) do not establish that the "healthy lifestyle" claim was either material to class members or the reason for their purchase, because that is not the only health-related claim on the product. Nor is it the most prominent health-related claim on the product. In particular, two other claims related to health appear on the ***front*** label of the Products at Issue—"70% Less Saturated Fat and 100% Less Cholesterol per serving than butter." Doc. 51-3 at 6-8. Thus, even consumers who deem "health and wellness attributes" a factor in their purchasing may not read or rely on the "healthy lifestyle" claim on the back of the Products at Issue.

Here, [redacted] In fact, one of the varieties of Fleischmann's sticks at issue here is Lactose & Gluten Free as well as Kosher pareve. Doc. 51-3 at 9. Consumers may have purchased this product, because they have a gluten allergy, are lactose intolerant, or require a non-dairy substitute for Kosher baking. Given the location of the "healthy lifestyle" claim and the presence of other claims on the product, Plaintiff has not shown that the "healthy lifestyle" claim was material to consumers' purchases. *See Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 668-69 (Cal. Ct. App. 1993). "[Where as here,] the [alleged] misrepresentation…is not material as to ***all*** class members, the issue of reliance would vary from consumer to consumer and the class should not be certified." *Stearns*, 655 F.3d at 1022-23 (internal quotation omitted) (emphasis added). Because issues of deception, reliance, and materiality will require individualized inquiry, Rule 23(b)(3)'s predominance requirement is not satisfied and class certification is inappropriate.

### B. Plaintiff Failed To Identify A Method To Measure Damages On A Classwide Basis

As the Supreme Court held in *Comcast*, Rule 23(b)(3) requires that to establish that classwide questions predominate over individual questions, Plaintiff must "establish[] that damages are capable of measurement on a classwide basis." 133 S. Ct. at 1433. Without such a showing, "[q]uestions of individual damage calculations will inevitably overwhelm questions

common to the class." *Id.* Importantly, "a model purporting to serve as evidence of damages in [a] class action must measure only those damages attributable to th[e] theory" of liability underlying the class claims. *Id.* At the class-certification stage, Plaintiff's proffered model for calculating damages "must be consistent with its liability case," and "courts must conduct a 'rigorous analysis' to determine whether that is so." *Id.* (citation omitted).

**1. Plaintiff Failed To Produce A Damages Model That Matches His Theory Of Liability.**

In his Motion, Plaintiff failed to proffer any damages model, let alone a damages model that measures "only those damages attributable" to Plaintiff's theory of liability. *Id.*; (Doc. 59 at 15). Instead of providing such a model, Plaintiff vaguely refers to a trial court's "broad equitable power to award restitution" that has the "purpose of restoring the plaintiff the amount that the defendant has wrongfully acquired." (*Id.*) In so doing, Plaintiff fails to describe how the Court would measure his proposed "restitution" damages. (*Id.*) Rather, he asserts without explanation that "the restitution award will be calculated using the sales information for the two varieties of Fleischmann's sticks at issue in this suit."[6] (*Id.*) Plaintiff does not state whether the purported "restitution" would equal the amount that consumers paid to retailers for the product, the amount that ConAgra received from retailers, the amount of profit ConAgra realized as a result of the product sales, or some other amount. Likewise, Plaintiff fails to identify how the amount to be paid to each class member will be calculated. For example, Plaintiff does not provide any method to account for the number of Fleischmann's sticks purchased by each class member or the amount actually paid by the consumer, including whether the consumer used coupons for the sale or paid a promotional price for the product.

Even if Plaintiff were to provide more details regarding his proposed "restitution" damages, his damages theory fails to satisfy *Comcast*'s requirement that it match his theory of liability. Specifically, Plaintiff apparently seeks a refund for class members. (*Id.* at 15.)

[6] Also unclear is how Plaintiff or his expert would attempt to separate out the sales of the Products at Issue that contained the "healthy lifestyle" claim from those that did not.

However, a "full refund" is only appropriate where class members received no benefit whatsoever from the purchase or consumption of a product. *See Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724, 2014 U.S. Dist. LEXIS 71575, at *78-79 (N.D. Cal. May 23, 2014) (noting that a "full refund" damages model cannot apply where "consumers received benefits in the form of calories, nutrition, vitamins, and minerals" from allegedly deceptively-labeled food products); *see also In re Tobacco Cases II*, 240 Cal. App. 4th 779, 794 (Cal. Ct. App. 2015) (noting that under "well-settled law," a plaintiff is not entitled to damages equal to a full refund of a product's purchase price where he or she "obtained value" from the product at issue). Plaintiff has not put forward any evidence demonstrating that consumers received zero value from the Fleischmann's products in the form of taste, calories, or other similar benefits.[7] (*See* Ugone Decl. ¶¶ 33 (noting that many features of the product give value to consumers, including "taste, salted / unsalted, fewer calories than butter, [and] no cholesterol").) Indeed, Plaintiff's own testimony undermines his assertion in this regard. He has purchased Fleischmann's products for approximately two decades, [redacted]; Backus Dep. 64:7-17.) He would not have continued to do so if he did not receive some value from doing so.

Because Plaintiff failed to demonstrate that consumers received no value from the Products at Issue, "the proper measure of restitution is '[t]he difference between what the plaintiff paid and the value of what the plaintiff received.'" *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (Cal. Ct. App. 2009). That is, "the restitution awarded to class members must correspond to a measurable amount representing the money that the defendant has acquired from each class member by virtue of its unlawful conduct." *Caldera v. J.M. Smucker Co.*, No. CV 12-4936, 2014 U.S. Dist. LEXIS 53912, at *9 (C.D. Cal. Apr. 15, 2014). Where a plaintiff alleges that part of a

---

[7] Plaintiff's expert Dr. Wong does assert, without support, in his Declaration that the value of the Products at Issue is $0 because they contain trans fat. (Wong Decl. ¶ 26, Doc. 60.) He provides no explanation for this assertion, which is not surprising given that he has no expertise to give such an opinion. Even if he did, he would need to provide some basis for such an opinion. His opinions in this regard should be stricken pursuant to Fed. R. Evid. 702 and *Daubert*.

product label misled consumers, the plaintiff "must present additional evidence of the value of [the products] without the allegedly unlawful statements in order to obtain restitution." *Ogden v. Bumble Bee Foods*, LLC, No. 5:12-CV-01828, 2014 U.S. Dist. LEXIS 565, at *51-54 (N.D. Cal. Jan. 2, 2014).

Plaintiff failed to propose any method for measuring the value of the Fleischmann's products as represented versus the value of the Fleischmann's products as received. (Doc. 59 at 15.) As ConAgra's expert Dr. Ugone explained in his Declaration, "[a] remedy equal to ConAgra's Challenged Product revenues (or the full purchase price of the Challenged Products) does not adequately account for (a) the value putative Class members received from the Challenged Products or (b) putative Class members who were satisfied with the with the Challenged Product purchased." (Ugone Decl. ¶ 32.) Moreover, Plaintiff's theory fails to account for "(a) numerous putative Class members were satisfied with the product relative to the price paid (as evidenced at least by the repeat purchases of the Named Plaintiff) and (b) many putative Class members likely were aware of the trans fat contents prior to their purchase of the Challenged Products." (*Id.*)

The Court in this case should follow the Central District of California's rejection of a similar approach in *Caldera v. J.M. Smucker Co*. 2014 U.S. Dist. LEXIS 53912. In *Caldera*, the plaintiff sought to certify a class of purchasers of food products with labels that allegedly contained misleading health claims. *Id.* at *1-2. To measure the class's damages, the plaintiff, like Plaintiff in this case, "merely state[d] that damages can be proven on a classwide basis based on Defendant's California sales data." *Id.* at *10; (*see also* Doc. 59 at 15). The court rejected this approach because "class members undeniably received some benefit from the products" and "[a]warding class members a full refund would not account for these benefits conferred upon class members." *Caldera*, 2014 U.S. Dist. LEXIS 53912, at *11. The *Caldera* plaintiff, like Plaintiff in this case, "failed to offer any evidence, let alone expert testimony, that damages can be calculated based on the difference between the market price and true value of the products." *Id.* at *12. Thus, the *Caldera* court found that "without such evidence, Plaintiff has failed to satisfy [his]

burden of proving that damages may be proven on a classwide basis" and denied class certification. *Id.* (citing *Comcast*, 133 S. Ct. at 1432). The Court should reach a similar result.

**2. The Court Should Disregard Dr. Wong's "Risk Estimate."**

In his Declaration, Dr. Wong claims that he can "estimate the increased risk and quantified costs of various diseases resulting from regular consumption of Fleischmann's." (Wong. Decl. ¶ 21.) The Court should disregard this alleged "risk estimate" for several reasons.

***First***, California does not permit Plaintiff to seek damages as a result of his alleged increased risk to contract "heart disease, colorectal cancer, and stroke" unless Plaintiff can show that he is more likely than not to develop one of these diseases. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 995 n.15 (1993) (noting that "claims seeking recovery for future injuries that have less than a reasonable probability or medical certainty of occurring are denied as speculative"). Plaintiff has not produced any evidence demonstrating that he is more likely than not to develop any of the alleged diseases, let alone produce evidence that the class as a whole is more likely than not to develop those diseases.

***Second***, Dr. Wong failed to demonstrate that he could calculate the alleged increased risk associated with Fleischmann's consumption on a classwide basis. In making his assertion, Dr. Wong relies on a 2009 paper titled "Quantitative Effects On Cardiovascular Risk Factors And Coronary Heart Disease Risk Of Replacing Partially Hydrogenated Vegetable Oils With Other Fats And Oils." (Wong Decl. ¶ 20 n.13.) The paper, however, does not state that every gram of trans fat consumption leads to a specific percentage increase in the risk of contracting heart disease. Rather, the paper purports to show the reduction in disease risk based on an individual's consumption of seven different substitute foods. (Wong Decl., Ex. L at S30.) Neither the article nor Dr. Wong provides any basis to determine how these purported numbers would apply to the class as a whole, or even if such a "risk analysis" is possible based on the data presented in the paper. Indeed, Dr. Petersen states that the levels of trans fat in the Products at Issue are below levels that a consumer would need to consume to reach the threshold for health effects for even the upper 90th percentile consumer of margarine. (Petersen Decl. ¶ 11.) In any event, she notes that Dr. Wong "ignores the important relationship between the amount of the fat that is consumed and

any toxic effect" in coming to his conclusion, which is improper. (*Id.*) She also concludes that there is not "a measurable increase in CHD risk" and therefore "no associated costs" due to the consumption of the Products at Issue, and in any event, the scientific evidence presently available does not "provide a reliable database for estimating risk or costs associated with other adverse health outcomes." (*Id.* ¶ 34.) Accordingly, Dr. Wong lacks any foundation for his purported "risk analysis," and the Court should disregard this opinion.

***Third***, as Dr. Ugone explains, Dr. Wong's proposed risk analysis could not be reliably performed. Specifically, there is no "reliable method to calculate the increased risk attributable solely to consumption of the Challenged Products as numerous confounding variables would inhibit Dr. Wong's ability to reliably perform this calculation using common proof." (Ugone Decl. ¶ 39.) For example, if a consumer "eats other foods with large amounts of trans fats, Dr. Wong would not be able to reliably determine the impact of consuming the Challenged Products (separate and apart from other factors)." (*Id.*) Thus, Dr. Wong's cursory reference to a hypothetical "risk analysis" should be disregarded as unreliable.[8]

**V. Plaintiff's Proposed Class Should Not Be Certified Under Rule 23(b)(2)**

Plaintiff's bid for certification under Rule 23(b)(2) also fails for many of the same reasons explained above. However, it fails for three additional reasons as well. First, as explained in in the Relevant Facts Section, the Products at Issue no longer contain any PHOs at all. Since Plaintiff's claim is based entirely on the presence of PHOs in the Products at Issue, the fact that PHOs have been removed renders his claim for injunctive relief moot. *See Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014). Second, no class may be certified under Rule 23(b)(2) where a plaintiff seeks monetary relief, except possibly in cases where it is purely incidental to injunctive relief. *Wal-Mart*, 564 U.S. at 360-61. That is not the case here, and Plaintiff does not so contend.

Third, Plaintiff's proposed class should not be certified under Rule 23(b)(2) because Plaintiff lacks standing to seek injunctive relief. Plaintiff himself no longer buys the Products at

[8] Plaintiff also fails to meet the superiority requirement for many of the same reasons he fails to meet the other Rule 23 requirements.

Issue. (Backus Dep. 134:17-25.) Moreover, Plaintiff now has knowledge regarding the "healthy lifestyle" claim, and thus cannot be "deceived" by any statement on the product label in the future. Because there is thus no "likelihood of future injury" for Plaintiff, he should be barred from seeking injunctive relief. *Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1044-45 (9th Cir. 1999); *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 458 (S.D. Cal. 2014) (certification not proper where plaintiff knows the "truth," cannot be further deceived, and will not incur future damages as a result of the alleged conduct). Proceeding under Rule 23(b)(2) cannot fix the multiple problems besetting Plaintiff's bid for class certification, and the Court should deny Plaintiff's motion.

## **MOTION TO STRIKE THE DECLARATIONS OF DR. WONG AND DR. BOWEN**

Plaintiff proffers two declarations of purported experts to support his Motion: (1) Robert Bowen, and (2) Nathan Wong. Expert testimony is only admissible if it meets the standard outlined in Fed. R. Evid. 702 and follows the familiar test detailed in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 591 (1993). Dr. Bowen's declaration is deficient on its face and fails to meet the requirements of reliability and relevance because he leaves this Court with the impossible task of assessing the "soundness" of his methodology without ever articulating a method. The same is true for paragraphs 10 and 20-26 of Dr. Wong's declaration because he articulates no method for determining the economic value of the Products at Issue (given that he has no expertise in this area) or how he could calculate the alleged increased risk and costs associated with consumption of the Products at Issue on as classwide basis. Because neither Bowen nor Wong present an opinion based upon a reliable foundation, *Daubert*, 509 U.S. at 597, ConAgra requests the Court strike all of Dr. Bowne's declaration and paragraphs 10 and 20-26 of Dr. Wong's declaration.

## **CONCLUSION**

Plaintiff has not satisfied the requirements for class certification. It is therefore proper to deny his Motion for Class Certification. It also proper to strike Plaintiffs' experts' declarations.

Dated: November 17, 2016

Respectfully submitted,

McGuireWoods LLP

/s/ Laura Coombe
Angela M. Spivey, *admitted pro hac*
A. Brooks Gresham
Laura Coombe
Attorneys for ConAgra Foods, Inc.