**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
DAVID ELLIOT (270381)
*david@westonfirm.com*
ANDREW C. HAMILTON (299877)
*andrew@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (313) 293-7071

***Counsel for Plaintiff***

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TROY BACKUS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CONAGRA FOODS, INC.,<br><br>Defendant. | Case No: 3:16-cv-00454-WHA<br><br>**REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Judge: The Honorable William H. Alsup<br>Date: December 15, 2016<br>Time: 8:00 a.m.<br>Location: Courtroom 8 |

**TABLE OF CONTENTS**


I. INTRODUCTION ....... 1

II. CONAGRA'S ARGUMENTS ABOUT THE CLASS DEFINITION FAIL ....... 1

III. CONAGRA IS WRONG THAT CONSUMERS' SUPPOSED MULTIPLE REASONS FOR PURCHASING FLEISCHMANN'S DEFEAT CERTIFICATION ....... 3

IV. CONAGRA CONFLATES THE ISSUES OF LACK OF COHESION AND UNIFORM EXPOSURE, AND IS WRONG ON BOTH COUNTS ....... 3

V. CONAGRA IS WRONG THAT THE CLASS IS NOT ENTITLED TO AN INFERENCE OF RELIANCE ....... 5

VI. TYPICALITY IS NOT DEFEATED BY A LACK OF RELIANCE ....... 6

VII. CONAGRA IS WRONG THAT STATUTE OF LIMITATIONS DEFEATS TYPICALITY ....... 6

VIII. CONAGRA IS WRONG THAT THERE IS NO METHOD TO MEASURE DAMAGES ON A CLASSWIDE BASIS ....... 8

IX. OPPOSITION TO MOTION TO STRIKE THE BOWEN AND WONG DECLARATIONS ....... 9

X. A NATIONWIDE CLASS IS APPROPRIATE UNDER CALIFORNIA LAW ....... 10

A. ConAgra's Contacts with California Are Sufficient to Satisfy Due Process ....... 11

B. ConAgra Does Not Meet the Burdens Placed on Foreign Law Proponents by California's Government Interests/Comparative Impairment Choice-of-Law Rule ....... 11

C. Sullivan's Extraterritorial Rule Does Not Apply to Consumer Fraud Class Actions. ....... 13

XI. CONAGRA DID NOT OPPOSE PLAINTIFF'S NOTICE PLAN OR REQUEST TO SHIFT NOTICE COSTS ....... 14

XII. CONCLUSION ....... 15

## TABLE OF AUTHORITIES

**CASES**

*Allapattah Servs. v. Exxon Corp.*,
333 F.3d 1248 (11th Cir. 2003) ........ 7

*Allen v. Hyland's, Inc.*,
2012 U.S. Dist. LEXIS 61606 (C.D. Cal. May 2, 2012) ........ 12

*Allen v. Hyland's, Inc.*,
300 F.R.D. 643 (C.D. Cal. 2014) ........ 12

*Annunziato v. eMachines, Inc.*,
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ........ 2

*Aryeh v. Cannon Bus. Sols.*,
55 Cal. 4th 1185 (2013) ........ 7

*Astiana v. Kashi Co.*,
291 F.R.D. 493 (S.D. Cal. 2013) ........ 2, 4

*Blackie v. Barack*,
524 F.2d 891 (9th Cir. 1975) ........ 8

*Brinker Rest. Corp. v. Super. Ct.*,
53 Cal. 4th 1004 (2012) ........ 8

*Bruno v. Quten Research Inst., LLC*,
280 F.R.D. 524 (C.D. Cal. 2011) ........ 12, 13

*Civ. Serv. Emps. Ins. Co. v. Super. Ct.*,
22 Cal. 3d 362 (1978) ........ 14

*Clothesrigger, Inc. v. GTE Corp.*,
191 Cal. App. 3d 605 (1987) ........ 14

*Comcast Corp. v. Behrend*,
133 S.Ct. 1426 (2013) ........ 8

*Conn. Ret. Plans & Trust Funds v. Amgen Inc.*,
660 F.3d 1170 (9th Cir. 2011) ........ 6

*Daubert v. Merrell Dow Pharms.*,
509 U.S. 579 (1993) ........ 10

*Delacruz v. Cytosport, Inc.*,
2012 U.S. Dist. LEXIS 51094 (N.D. Cal. Apr. 11, 2012) .......... 5

*Forcellati v. Hyland's, Inc.*,
876 F. Supp. 2d 1155 (C.D. Cal. 2012) .......... 12

*Guttmann v. La Tapatia Tortilla, Inc.*,
2015 U.S. Dist. LEXIS 156800 (N.D. Cal. Nov. 18, 2015).......... 6

*Hanon v. Dataprods. Corp.*,
976 F.2d 497 (9th Cir. 1992) .......... 6

*Harshbarger v. Philip Morris, Inc.*,
2003 U.S. Dist. LEXIS 25023 (N.D. Cal. Apr. 1, 2003) .......... 7

*Henry v. Lehman Commer. Paper, Inc.*,
471 F.3d 977 (9th Cir. 2006) .......... 4

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
810 F. Supp. 2d 1013 (C.D. Cal. 2011) .......... 4

*Hunt v. Check Recovery Sys.*,
2007 U.S. Dist. LEXIS 58800 (N.D. Cal. July 25, 2007).......... 14

*Hunt v. Imperial Merch. Servs., Inc.*,
560 F.3d 1137 (9th Cir. 2009) .......... 14

*In re Clorox Consumer Litig.*,
301 F.R.D. 436 (N.D. Cal. 2014).......... 2

*In re POM Wonderful LLC Mktg. & Sales Practices Litig.*,
2012 U.S. Dist. LEXIS 141150 (C.D. Cal. Sep. 28, 2012).......... 11, 12, 13

*In re TFT-LCD Antitrust Litig.*,
267 F.R.D. 291 (N.D. Cal. 2010).......... 7

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) .......... 3

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (Cal. Ct. App. 2009) .......... 8

*Jones v. ConAgra Foods, Inc.*,
2014 U.S. Dist. LEXIS 81292 (N.D. Cal. Jun. 13, 2014).......... 4, 5

*Kanawi v. Bechtel Corp.*,
254 F.R.D. 102 (N.D. Cal. 2008).......... 7, 8

*Krueger v. Wyeth, Inc.*,
310 F.R.D. 468 (S.D. Cal. 2015) .......... 2

*Kumar v. Salov N. Am. Corp.*,
2016 U.S. Dist. LEXIS 92374 (N.D. Cal. July 15, 2016) .......... 2, 3

*Leyva v. Medline Indus.*,
716 F.3d 510 (9th Cir. 2013) .......... 8

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......... 11, 12

*McCann v. Foster Wheeler LLC*,
48 Cal. 4th 68 (2010) .......... 11

*McCrary v. Elations Co., LLC*,
2014 U.S. Dist. LEXIS 8443 (C.D. Cal. Jan. 13, 2014) .......... 2

*McLaughlin v. Am. Tobacco Co.*,
522 F.3d 215 (2d Cir. 2008) .......... 6

*Miletak v. Allstate Ins. Co.*,
2010 U.S. Dist. LEXIS 26913 (N.D. Cal. Mar. 5, 2010) .......... 3

*Miller v. Lakeside Village Condominium Assn.*,
1 Cal. App. 4th 1611 (1991) .......... 6

*Oakland Raiders v. Oakland-Alameda Cnty. Coliseum, Inc.*,
144 Cal. App. 4th 1175 (2006) .......... 6

*Pecover v. Elec. Arts., Inc.*,
2010 U.S. Dist. LEXIS 140632 (N.D. Cal. Dec. 21, 2010) .......... 11

*Pierce-Nunes v. Toshiba Am. Info. Sys.*,
2016 U.S. Dist. LEXIS 149847 (C.D. Cal. June 23, 2016) .......... 5

*Plumlee v. Pfizer, Inc.*,
2014 U.S. Dist. LEXIS 121634 (N.D. Cal. Aug. 29, 2014) .......... 7

*Pokorny v. Quixtar, Inc.*,
601 F.3d 987 (9th Cir. 2010) .......... 13

*Prohias v. Pfizer, Inc.*,
485 F. Supp .2d 1329 (S.D. Fla. 2007) .......... 6

*Red v. Kraft Foods, Inc.*,
2011 U.S. Dist. LEXIS 116965 (C.D. Cal. Sept. 29, 2011) .......... 6

*Ries v. Ariz. Bevs. USA LLC*,
287 F.R.D. 523 (N.D. Cal. 2012) ....................3

*Snapp & Assocs. Ins. Servs., Inc. v. Malcom Bruce Burlingame Robertson*,
96 Cal. App. 4th 884 (2002) ....................6

*Stearns v. Ticketmaster Corp.*,
655 F.3d 1013 (9th Cir. 2011) ....................5

*Steroid Hormone Prod. Cases*,
181 Cal. App. 4th 145 (2010) ....................6

*Sullivan v. Oracle Corp.*,
51 Cal. 4th 1191 (2011) ....................13

*Sullivan v. Oracle Corp.*,
557 F.3d 979 (9th Cir. 2009) ....................13

*Tait v. BSH Home Appliances Corp.*,
289 F.R.D. 466 (C.D. Cal. 2012) ....................9

*Tibble v. Edison Int'l*,
2009 U.S. Dist. LEXIS 120939 (C.D. Cal. June 30, 2009) ....................7

*Wash. Mut. Bank, FA v. Super. Ct.*,
24 Cal. 4th 906 (2001) ....................13, 14

*Wershba v. Apple Computer, Inc.*,
91 Cal. App. 4th 224 (2001) ....................14

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
594 F.3d 1087 (9th Cir. 2010) ....................8

## I. INTRODUCTION

Plaintiff's motion for class certification and supporting documents provided analysis and evidence for each of Rule 23's prereqisites for class certification, showing each was met. He further provided a trial plan, a plan for class notice, an objective class definition, and a model for damages supported, not by hired-gun consulting-firm professional expert witnesses, but by two of the most distinguished professors of accounting and epidemiology in California.

ConAgra's opposition rests primarily upon random snippets of district court cases, rarely addressing the facts in those cases or why their reasoning would also apply here. ConAgra almost wholly failed to address the actual binding authority cited by Plaintiff. Plaintiff cited twenty-three controlling decisions of the Ninth Circuit, of which ConAgra only cited three.[1] Plaintiff likewise cited a large number of controlling decisions of California courts on issues of California law, which ConAgra likewise ignored, this time failing to address 20 of 23 cases cited by Plaintiff.[2]

## II. CONAGRA'S ARGUMENTS ABOUT THE CLASS DEFINITION FAIL

The class is defined as retail buyers of Fleischmann's stick margarines made with artificial trans fat containing the label claim "maintain your healthy lifestyle," from 2008 to the present. ConAgra confirms it began this practice in 2008, and also states it stopped production of margarine with artificial trans fat in June 2016. Brown Decl. ¶ 3.

ConAgra argues that "ascertaining class membership is not feasible because it will be difficult to determine who actually saw the challenged claim on the Products." Opp. at 9. This argument, first, fails

---

[1] Among the binding federal authorities in Plaintiff's motion ConAgra ignored are *Amgen v. Conn. Ret. Plans & Tr. Funds*, 133 S. Ct. 1184 (2013); *Davis v. HSBC Bank*, 691 F.3d 1152 (9th Cir. 2012); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998); *Hinojos v. Kohl's Corp*, 718 F.3d 1098 (9th Cir. 2013); *Leyva v. Medline Indus*, 716 F.3d 510 (9th Cir. 2013); *Lozano v. AT&T Wireless Servs*. 504 F.3d 718 (9th Cir. 2007); *Rubio v. Capital One Bank*, 613 F.3d 1195 (9th Cir. 2010); *Stockwell v. San Francisco*, 749 F.3d 1109 (9th Cir. 2014); and *Yokoyama v. Midland Nat'l Life Ins*. Co, 594 F.3d 1087 (9th Cir. 2010).

[2] These binding state authorities include *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011); *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95 (2006); *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015); *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663 (2006); and *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001).

as a simple matter of not addressing the actual class definition. The proposed class is not those who "saw the challenged claim," but those who *purchased* the product containing the claim. While inevitably many, if not most, did see the claim, there is no requirement that unnamed class members ever have read or relied upon challenged false advertising. "[A] presumption of exposure is inferred where, as here, the alleged misrepresentations were on the outside of the packaging of every unit for an extended period." *McCrary v. Elations Co., LLC*, 2014 U.S. Dist. LEXIS 8443, at *39 (C.D. Cal. Jan. 13, 2014).

> The goal of both the UCL and the FAL is the protection of consumers. . . . Even in this day of increased consumer awareness, not every consumer reads every label. . . . Some consumers are likely never to read the representations. Suppose a father sends his young son on an adventure to the supermarket to purchase the same box of [fraudulently-labeled] cookies. He would be cheated on the purchase but be without relief if he failed to read and rely on the label. Or consider a person with minimal or no literacy skills who purchases a product on the basis of the box design or other visual characteristics. . . . The goal of consumer protection is not advanced by eliminating large segments of the public from coverage under the UCL or the FAL where they suffer actual harm merely because they were inattentive or for one reason or another lacked the language skills to appreciate the particular unfair or false representation in issue.

*Annunziato v. eMachines, Inc*., 402 F. Supp. 2d 1133, 1137-38 (C.D. Cal. 2005).

The proposed class definition is ascertainable because its "objective criteria" allow class members to self-identify. *See* Mot. at 2. "[C]ourts in this circuit have found proposed classes ascertainable even when the <u>only way</u> to determine class membership is with self-identification." *Krueger v. Wyeth, Inc*., 310 F.R.D. 468, 476 (S.D. Cal. 2015) (emphasis in original). "[T]he identity of the class members need not be known at the time of certification." *In re Clorox Consumer Litig*., 301 F.R.D. 436, 440 (N.D. Cal. 2014). A proposed class is thus ascertainable when

> the proposed class definition simply identifies purchasers of Defendant's products that included the allegedly material misrepresentations. Because the alleged misrepresentations appeared on the actual packages of the product[] purchased, there is no concern that the class includes individuals who were not exposed to the misrepresentation.

*Astiana v. Kashi Co*., 291 F.R.D. 493, 500 (S.D. Cal. 2013). Similarly, in *Kumar v. Salov N. Am. Corp*., 2016 U.S. Dist. LEXIS 92374, at *28 (N.D. Cal. July 15, 2016), the court found:

> arguments about whether consumers were likely to notice the challenged phrase on the front of the bottle given the small font size and lack of contrast with the rest of the bottle go to the merits of the claim, not to whether a class should be certified. Whether a reasonable consumer would have seen the phrase and been misled remains a common question.

ConAgra also argues that Fleischmann's sticks no longer contain trans fat. But the class is defined to only include purchases during the time it contained trans fat.

## III. CONAGRA IS WRONG THAT CONSUMERS' SUPPOSED MULTIPLE REASONS FOR PURCHASING FLEISCHMANN'S DEFEAT CERTIFICATION

ConAgra argues the class cannot be certified because consumers buy Fleischmann's for reasons other than its "maintain your healthy lifestyle" claim, and at length describes some of those reasons, such as "tradition" and that it is certified kosher. As Judge Seeborg noted, this would create an impossible standard, as any defendant could show "consumers may have had multiple reasons for purchasing a product and if accepted, would prevent class certification in every consumer product labeling case. That is clearly not the law." *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 538 n.4 (N.D. Cal. 2012). Nor is it relevant that Mr. Backus may have had additional motivations for purchasing Fleischmann's, since "[i]t is not necessary that [plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor in influencing his conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326-27 (2009) (quotations and citation omitted). Nor is ConAgra's argument that Mr. Backus's motivations for purchasing Fleischmann's changed over time relevant, as "[t]here is no requirement under the UCL that Plaintiff rely on the misrepresentation on multiple occasions, or that there is a pattern of reliance. Plaintiff need only prove that he relied on the misrepresentation once." *Miletak v. Allstate Ins. Co.*, 2010 U.S. Dist. LEXIS 26913, at *17 (N.D. Cal. Mar. 5, 2010). For this same reason, ConAgra's argument that "Plaintiff did not suffer the same or similar injuries as other class members" because he supposedly in late 2015 "did not rely on the 'healthy lifestyle' claim" is to no avail. Opp. at 12.

## IV. CONAGRA CONFLATES THE ISSUES OF LACK OF COHESION AND UNIFORM EXPOSURE, AND IS WRONG ON BOTH COUNTS

Similar to the instant case is *Kumar v. Salov N. Am. Corp.*, 2016 U.S. Dist. LEXIS 92374 (N.D. Cal. July 15, 2016), where the court considered a motion to certify a class alleging the defendant mislabeled olive oil as "Imported from Italy." *Id.* at *26-27. The defendant claimed that plaintiff could not show uniform exposure because, on many of the bottles, the "Imported from Italy" claim would have been obscured by a neck collar. The court found this unpersuasive, and that the defendant "offer[ed] no

evidence to establish that the collars actually obscured the text, or that consumers would not have moved the tag aside to view the bottle label or otherwise have seen the text." *Id.* at *27.

Plaintiff's claims here are limited to the only two Fleischmann's "stick" flavors, sold in rectangular wax-cardboard boxes, easily recognizable by a reasonable consumeattionr as different than Fleischmann's "tub" products which are not included in the class, and sold in round plastic tubs. ConAgra analogizes the case to ones involving dozens or even 100 different package variations, but the only variation in the challenged claim it notes is that sticks manufactured in California had a slightly different placement of the "healthy lifestyle claim." Opp. at 3. It nowhere shows, however, why such minor variation would preclude certification. "The class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims." *Henry v. Lehman Commer. Paper, Inc.*, 471 F.3d 977, 992 (9th Cir. 2006).

The cases cited by ConAgra are all distinguishable. *Jones v. ConAgra Foods, Inc.*, 2014 U.S. Dist. LEXIS 81292 (N.D. Cal. Jun. 13, 2014) involved not two but 15 different varieties, each with labels containing different representations made at different times. *Id.* at *10-11, *67. The court found a lack of uniform exposure when consumers because "there is no way to determine whether a class member ever bought a product with a challenged statement on it." *Id*. at *67. Here, all a consumer need remember is that he purchased Fleischmann's sticks between 2008 and June 2016. *Astiana v. Kashi Co*., 291 F.R.D. 493, 508 (S.D. Cal. 2013) (Opp. at 18) is also distinguishable because it involved a "large number and different types of products challenged." Here, it is possible to identify which class members were exposed to the label containing the misrepresentation. The common question is, then, whether a reasonable consumer would have examined the back of the package of a margarine product to determine health information at the time of purchase. As this question is common to all members of the class, commonality is not defeated.

*Hokto Kinoko Co. v. Concord Farms, Inc.*, 810 F. Supp. 2d 1013 (C.D. Cal. 2011) is also distinguishable. This opinion is not about class certification or consumer protection. Rather, the opinion concerns summary judgment of a trademark infringement case between two businesses.

To show lack of cohesion and that "consumers' understanding of the representations varied,"

ConAgra cites *Pierce-Nunes v. Toshiba Am. Info. Sys.*, 2016 U.S. Dist. LEXIS 149847 (C.D. Cal. June 23, 2016), where the plaintiff claimed calling LED-lit TVs "LED TV" was deceptive. But in thas case:

> Defendants introduced evidence that their packaging for their LED-lit LCD TVs has varied since 2010, such that approximately 90% of the cartons for roughly 100 different sizes and models of LED TVs "have either disclosed that the TVs use LEDs for backlighting, expressly referenced the use of LCD technology, or contained no mention of 'LED TV' or even LEDs at all."

*Id.* at *21-22 (internal quotations and citations omitted). Contrary to ConAgra's assertion that the court was discussing lack of cohesion and that "consumers' understanding of the representations varied," the court was actually considering whether there was uniform exposure of the representation to the class. Moreover, this case is distinguishable because there were "roughly 100 different sizes and models" of TVs in question, each with their own packages, and about 90% of them did not contain any supposed misrepresentations, or weaker ones than the box the plaintiff purchased. There is no such showing here. Likewise, the *Stearns* discussion of lack of "cohesion" was in relation to whether class members "were exposed to quite disparate information from various representatives of the defendant." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1020 (9th Cir. 2011).

ConAgra's reliance on *Delacruz v. Cytosport, Inc.*, 2012 U.S. Dist. LEXIS 51094 (N.D. Cal. Apr. 11, 2012), is also misplaced. That case does not concern a motion for class certification, but a motion to dismiss. *Id.* at *1.

In addition, ConAgra relies on *Jones v. ConAgra Foods, Inc.*, 2014 U.S. Dist. LEXIS 81292 (N.D. Cal. June 13, 2014). The decision there that there was lack of cohesion because there is "no fixed meaning for the word 'natural'" is wrong and contrary to *Stearns*, as the standard is not a "uniform understanding" of the label claims, but an objective "reasonable man." *Compare Jones*, 2014 U.S. Dist. LEXIS 81292, at *54, 64 *with Stearns*, 655 F. 3d at 1022. *See also Kumar,* 2016 U.S. Dist. LEXIS 92374, at *28-29 (distinguishing and declining to follow *Jones*).

## V. CONAGRA IS WRONG THAT THE CLASS IS NOT ENTITLED TO AN INFERENCE OF RELIANCE

ConAgra argues that Plaintiff's CLRA and express warranty claims require a showing of reliance. Opp. at 17. "[S]uch an inference [of reliance] is only permitted if Plaintiff demonstrates that the alleged misrepresentation has been made to the entire class and that it is material." Opp. at 17. As

ConAgra concedes, "[m]ateriality is judged by a reasonable man standard . . . ." Opp. at 17 (quotations omitted), *citing Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157 (2010). Again, ConAgra misses the point: because materiality is judged by a "reasonable man" standard, it is an issue common to the entire class. Any further inquiry goes to the merits of the claim, not issues of commonality. Backus need not demonstrate materiality for certification. *See Conn. Ret. Plans & Trust Funds v. Amgen Inc.*, 660 F.3d 1170, 1177 (9th Cir. 2011).

## VI. TYPICALITY IS NOT DEFEATED BY A LACK OF RELIANCE

ConAgra attacks typicality by claiming Backus did not reasonably rely on the healthy lifestyle claim. ConAgra's emphasis on reliance is misplaced because reliance is an objective merits question, not a class certification issue. Finding the plaintiff's possible lack of reliance did not preclude a finding of typicality, the court in *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) held:

> We emphasize that the defense of non-reliance is not a basis for denial of class certification. *See Blackie*; *In re Pizza Time Theatre Sec. Litig.*, 112 F.R.D. 15, 22 (N.D.Cal.1986) (lack of reliance is a defense; it goes to the merits of the case and cannot be considered in a certification motion); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78[ ] (1974) (a motion for class certification is not the appropriate point at which to resolve the merits of a plaintiff's claim)).

Moreover, ConAgra cites *Prohias v. Pfizer, Inc.*, 485 F. Supp .2d 1329 (S.D. Fla. 2007) (considering a motion to dismiss); *Oakland Raiders v. Oakland-Alameda Cnty. Coliseum, Inc.*, 144 Cal. App. 4th 1175 (2006) (considering a judgment notwithstanding the verdict); *Guttmann v. La Tapatia Tortilla, Inc.*, 2015 U.S. Dist. LEXIS 156800 (N.D. Cal. Nov. 18, 2015) (considering a motion to dismiss in a case already distinguished by this court); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008) (concerning class certification but not addressing typicality); and *Red v. Kraft Foods, Inc.*, 2011 U.S. Dist. LEXIS 116965 (C.D. Cal. Sept. 29, 2011) (finding typicality "is probably satisfied"). These cases are either inapplicable, or show that the typicality requirement has been met.

## VII. CONAGRA IS WRONG THAT STATUTE OF LIMITATIONS DEFEATS TYPICALITY

Without citing any class action cases, ConAgra argues that California's "first injury rule" precludes class certification. *See* Opp. at 13, *citing Snapp & Assocs. Ins. Servs., Inc. v. Malcom Bruce Burlingame Robertson*, 96 Cal. App. 4th 884 (2002) (appeal of a judgment between two insurance companies); *Miller v. Lakeside Village Condominium Assn.*, 1 Cal. App. 4th 1611, 1622 (1991)

(summary judgment in a personal injury case, finding only that "a single tort can be the foundation for but one claim for damages."); and *Harshbarger v. Philip Morris, Inc.*, 2003 U.S. Dist. LEXIS 25023 (N.D. Cal. Apr. 1, 2003) (motion to dismiss in a personal injury case of an individual smoker). In *Harshbarger*, the plaintiff was first injured in 1962 when the defendant first sold him cigarrettes as a minor, and continued to do so until 1968. The plaintiff argued that the statute of limitations only began to run when he was diagnosed with lung cancer in 2001. *Id.* at *20-22. The court found that the statute of limitations began to run at the latest in 1968, when the plaintiff turned 18. *Id.* at *21-22. In contrast, this case involves numerous and repeated violations of the UCL, each one involving its own separate economic injury, and the last of Plaintiff's purchases was in 2015. The allegations may be applied on a classwide basis so long as the Court determines Backus could submit common proof on which a jury could find fraudulent concealment and/or delayed discovery should apply. *See Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1263 (11th Cir. 2003) (evidence of the defendant's behavior common to the class sufficiently established elements of fraudulent concealment); *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 291, 310 (N.D. Cal. 2010) (fraudulent concealment allegations focused on defendant's behavior that was common to the class).

Rather, ConAgra's cases run contrary to the applicable law. In *Plumlee v. Pfizer, Inc.*, the court found that the California Supreme Court specified that UCL claims are "'governed by common law accrual rules,' including delayed discovery." 2014 U.S. Dist. LEXIS 121634, at *22 n.5 (N.D. Cal. Aug. 29, 2014), *quoting Aryeh v. Cannon Bus. Sols.*, 55 Cal. 4th 1185, 1196 (2013). The discovery rule "delays the accrual of a cause of action until the injury was or should have first been discovered by the plaintiff." *Harshbarger*, 2003 U.S. Dist. LEXIS 25023, at *24. Here, Backus alleges that he did not discover his injury until 2015. FAC ¶¶ 134-35.

Moreover, statute of limitations is a merits argument inappropriate for resolution at this stage. *See Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 112 (N.D. Cal. 2008) (noting in class certification order that "[i]t would be premature for the Court to make a determination on the merits of the tolling claim at this point in the litigation"). At certification, a plaintiff is not required to prove the merits of his or her delayed discovery allegations. *See Tibble v. Edison Int'l*, 2009 U.S. Dist. LEXIS 120939, at *28 (C.D. Cal. June 30, 2009) ("Because the statute of limitations is an affirmative defense, . . . a determination on

the statute of limitations is premature at [certification stage].”); *Kanawi*, 254 F.R.D. at 112 (same).

**VIII. CONAGRA IS WRONG THAT THERE IS NO METHOD TO MEASURE DAMAGES ON A CLASSWIDE BASIS**

ConAgra, relying on a professional expert witness, cites to *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013) to argue that Plaintiff’s proposed method of calculating restitution and damages, which is to calculate them as ConAgra’s gross sales from Fleischmann’s sticks, is wrong and fatal to his motion. ConAgra gets the holding of *Comcast* wrong, however. *Comcast* does not endorse any particular model. In that case, the plaintiffs initially put forth several economic models of antitrust liability, some of which were dismissed. *Comcast*, 133 S.Ct. at 1433. Their model for damages, however, conformed only to the dismissed models, not the one that survived dismissal. In *Leyva*, the Ninth Circuit rejected ConAgra’s argument that “questions of individual damages will inevitably overwhelm questions common to the class.” Opp. at 23, *citing Comcast*, 133 S.Ct. at 1432-33. As the *Levya* court explained, *Comcast* simply means “plaintiffs must be able to show that their damages stemmed from the defendant’s actions that created the legal liability.” *Leyva v. Medline Indus.*, 716 F.3d 510, 514 (9th Cir. 2013). In the Ninth Circuit, it is black letter law that individual issues of damages cannot predominate so as to defeat class certification. *Leyva*, 716 F.3d at 513; *Yokoyama v. Midland Nat’l Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010); *Blackie v. Barack*, 524 F.2d 891, 905 (9th Cir. 1975). The same is true under California law. *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1054 (2012).

Here, ConAgra argues that Backus’s proposed “full refund” model is inappropriate, and argues that “the proper measure of restitution is ‘[t]he difference between what the plaintiff paid and the value of what the plaintiff received.’” Opp. at 21, *quoting In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (Cal. Ct. App. 2009). This misstates *Vioxx*, which reads: “The difference between what the plaintiff paid and the value of what the plaintiff received is **a** proper measure of restitution.” 180 Cal. App. 4th at 131. (emphasis added). Additionally, the facts in *Vioxx* are distinguishable. The *Vioxx* court found that “evidence indicates that Vioxx was worth more than naproxen to a majority of class members, it is more than sufficient to support the trial court’s conclusion that naproxen is not a valid comparator on a classwide basis.” 180 Cal. App. 4th at 136.

ConAgra’s argument is not actually with Plaintiff’s model. It does not dispute that if Plaintiff

establishes that Fleischmann's had zero value that he and the class would be entitled to full restitution. Rather, ConAgra's argument is a premature merits argument about the evidence Plaintiff will present for a value of zero, as it finds its own evidence that Fleischmann's has positive value more persuasive. Nor does ConAgra even discuss the many cases Plaintiff cited affirming the validity of full restitution models. At trial, the jury may agree with Plaintiff, with ConAgra, or may split the difference, but ConAgra simply has not shown that Plaintiff's model is precluded as a matter of law. In *Kumar*, the court, certifying the class, found that "[w]hile the ultimate persuasiveness of the model is a matter to be decided by a trier of fact, [plaintiff] has sufficiently established that it has a model for calculating the damages resulting from its theory of liability." *Kumar*, 2016 U.S. Dist. LEXIS 92374, at *32. This is a question capable of classwide resolution.

## IX. OPPOSITION TO MOTION TO STRIKE THE BOWEN AND WONG DECLARATIONS

No full *Daubert* inquiry need be made at class certification. *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 494 (C.D. Cal. 2012). Rather, the court undertakes a "tailored *Daubert* analysis at the class certification stage" because, *inter alia*, limited discovery prevents a full *Daubert* inquiry. *Tait*, 289 F.R.D. at 493-94.

ConAgra argues that "Dr. Wong failed to demonstrate that he could calculate the alleged increased risk associated with Fleischmann's consumption on a classwide basis" because, ConAgra argues, there is a threshold below which consumption of trans fats is not harmful. Opp. at 23; Peterson Decl. ¶ 11. But this is, first, a merits issues not related to the elements of class certification. Second, it is wrong as a matter of fact, and the idea that there is a "threshold" below which trans fats are safe was flatly rejected by the FDA:

> The scientific evidence, including combined analyses of multiple studies (meta-analyses), supports a progressive and linear cause and effect relationship, with no evidence of threshold, between trans fatty acid intake and adverse effects on blood lipid biomarkers that predict CHD risk, including low-density lipoprotein cholesterol (LDL-C), high density lipoprotein cholesterol (HDL-C), and the total to HDL and LDL to HDL cholesterol ratios . . . In addition, we conclude that successive meta-analyses using increasing amounts of data define quantitative relationships and show no evidence of a threshold below which trans fatty acids do not adversely affect blood lipids.

FDA Division of Petition Review, Toxicology Review Team, <u>Safety Assessment of Industrial Trans</u>

Fatty Acids from Partially Hydrogenated Oils. ("Trans Fat Toxicology Review Memorandum One") (June 11, 2015) at 2 (available at tinyurl.com/toxmemo1).

ConAgra argues that "Dr. Bowen's declaration is deficient on its face and fails to meet the requirements of reliability and relevance because he leaves this Court with the impossible task of assessing the 'soundness' of his methodology without ever articulating a method." Opp. at 25. Here, however, the question answered by Dr. Bowen is not the final amount of restitution due to the class, but merely whether ConAgra's sales information will allow the calculation of ConAgra's total revenue and interest on a classwide basis. *Daubert*, following Fed. R. Evid. 702, tasks the court with "ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597 (1993). Dr. Bowen identifies the data that he would rely upon and the methodology he would use. Bowen Decl. ¶ 6-7. To the extent that Dr. Bowen addresses whether ConAgra's sales information will allow the calculation of ConAgra's total revenue and interest on a classwide basis, his testimony rests on a reliable foundation and is relevant to the task at hand, and is consistent with *Daubert*. It is not clear what else ConAgra thinks Dr. Bowen needed to do. Specify each and every step he would take to calculate pre-judgment interest once he has the full sales data?

ConAgra similarly argues that paragraphs 20-26 of Dr. Wong's declaration should be stricken "because he articulates no method for determining the economic value of the Products at Issue . . . or how he could calculate the alleged increased risk and costs associated with consumption of the Products at Issue on as [*sic*.] classwide basis." Opp. at 25. Here, however, Dr. Wong is not now testifying as to the actual increased risk or quantified costs of various diseases, but to whether there is a method to estimate those on a classwide basis. Dr. Wong identifies the data that he would rely upon and the methodology that he would use to come to an estimate. Wong Decl. ¶ 20-23. Because Dr. Wong addresses whether there is a method to estimate increased risks and on a classwide basis, his testimony rests on a reliable foundation and is relevant to the task at hand, and satisfies *Daubert*.

## X. A NATIONWIDE CLASS IS APPROPRIATE UNDER CALIFORNIA LAW

ConAgra's arguments against the certification of a nationwide class conflate three relevant questions: (1) does a nationwide class violate ConAgra's right to Due Process? (2) does California's choice-of-law rule mandate other states' laws apply to claims against ConAgra? (3) are California's

consumer fraud statutes subject to a presumption against extraterritoriality?

**A. ConAgra's Contacts with California Are Sufficient to Satisfy Due Process**

ConAgra argues that other states may have more contacts with it than California. By ConAgra's own admission, the products were manufactured in California during the class period. Opp. at 3-4. Since 2008, 4.6 million of Fleischmann's sticks were produced in California. Opp. at 3-4. That ConAgra may have produced more of the product in Indiana is unavailing. "California could have a smaller actual interest in the claims than that of other states yet still have significant contacts to satisfy due process." *Pecover v. Elec. Arts., Inc.*, 2010 U.S. Dist. LEXIS 140632, at *50 (N.D. Cal. Dec. 21, 2010). The same is true in regards to ConAgra's argument that California is only the ninth largest market for the product—a questionable claim based on shipments to distributors, not only retail sales. Regardless, a sufficient amount of the product was produced and sold in California to satisfy due process, and the same is true even if other states have a stronger nexus to the claims than California. ConAgra's documents also show that Fleischmann's formulation, product design and development, and the printing of the actual label with the deceptive claims also occurred at least in part in California. Hamilton Decl., Exs. 26-29. ConAgra does not attempt to dispute this.

**B. ConAgra Does Not Meet the Burdens Placed on Foreign Law Proponents by California's Government Interests/Comparative Impairment Choice-of-Law Rule**

Once sufficient contacts to satisfy due process are established, the burden is on the party arguing against a nationwide class to (1) show "whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different," (2) show "each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists," and (3) "carefully evaluate[] and compare[] the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately appl[y] the law of the state whose interest would be more impaired if its law were not applied." *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87-88 (2010); *In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, 2012 U.S. Dist. LEXIS 141150, at *9-12 (C.D. Cal. Sep. 28, 2012); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589-90 (9th Cir. 2012). ConAgra did not even attempt to

meet its burden on the second and third requirements.

ConAgra relies heavily on *Mazza*, but that decision repeatedly stated its holding was limited to the facts before it. *See Mazza*, 666 F.3d at 593 ("These interests are squarely implicated in this case"); at 594 ("necessary to achieve that interest in this case."); and at 594 ("Under the facts and circumstances of this case, we hold . . .") (emphases added); *Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524, 538-40 (C.D. Cal. 2011) (finding nationwide California-law certification appropriate and not precluded by *Mazza*); *Allen v. Hyland's, Inc.*, 2012 U.S. Dist. LEXIS 61606, at *4-7 (C.D. Cal. May 2, 2012); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159-60 (C.D. Cal. 2012). The *Mazza* court's holding—that Honda had in fact met its burden under the comparative impairment test on the facts of that case—does not undermine a finding that ConAgra failed to do so here.

> *Mazza* could not have abrogated the California Supreme Court's instruction that the governmental interest test is a case-by-case determination, with the burden of proof falling in each case on the proponent of foreign law—i.e., Defendants in this case. […] [I]f *Mazza* stood for the proposition that all consumer class actions must be adjudicated under the laws of the different states as a matter of law, nationwide consumer class actions would become unmanageable and impossible to certify, and such an outcome would be contrary to the express purpose of CAFA to "assure fair and prompt recoveries for class members with legitimate claims." Thus, this Court understands *Mazza's* holding to be that, under the facts in that case, with the issue fully briefed by the parties, foreign law applied under the governmental interest test. This case, however, involves different facts, and Defendants have not borne their burden of demonstrating that foreign law applies. Defendants assert that *Mazza* and other cases have held that "there is an actual conflict in the consumer protection laws of the various states," but they fail to provide *any case-specific analysis* addressing the differences among the state laws at issue. Rather, Defendants conclusorily assert that the laws of the 50 states are "markedly different" and contend that Plaintiffs have not demonstrated otherwise. Defendants have also failed to provide case-specific analysis as to the second and third prongs of the governmental interest test, relying instead on *Mazza*.

*Allen v. Hyland's, Inc.*, 300 F.R.D. 643, 657-58 (C.D. Cal. 2014) (emphasis in original and internal citations omitted).

While ConAgra attached a chart to a declaration listing laws, it did not "apply the facts of this case to those laws or attempt to demonstrate, beyond citation to *Mazza*, that a true conflict exists." *In re POM Wonderful LLC Mktg. & Sales Practices Litig.*, 2012 U.S. Dist. LEXIS 141150, at *13. Thus, like POM Wonderful, ConAgra "fails to carry its burden to demonstrate that the interests of any foreign

jurisdiction outweigh California's interest in applying its own consumer protection laws to the facts of this case." *Id.* at *13-14. "Defendant has the burden of showing that there is an actual conflict between California and other law. . . . 'on the facts of this case.'" *Bruno*, 280 F.R.D. at 539-40 (emphasis added), *citing Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 921 (2001); *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 995 (9th Cir. 2010). There was nothing to prevent ConAgra from arguing, as did Honda in *Mazza*, that the law of other states conflicts with California law, that those states have a greater interest in applying their law, would be more impaired if not applied, and a true conflict, which would actually change the outcome of the case, exists. But it simply did not even try.

### C. *Sullivan's* Extraterritorial Rule Does Not Apply to Consumer Fraud Class Actions.

ConAgra argues there is a presumption against extraterritorial application of Calfironia law applicable to the fraud claims before the court. The argument fails for several reasons. First, the single decision cited by ConAgra for this argument, *Ortega v. Natural Balance*, 2013 U.S. Dist. LEXIS 176437 (C.D. Cal. Dec. 13, 2013), involved a misapplication of the rule articulated by *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011). But *Sullivan* was a certified question case dealing with solely with California overtime rules and expressly "confined to the circumstances of this case as established by the stipulated facts." *Sullivan*, 51 Cal. 4th at 1208. Specifically, the certified questions the California Supreme Court accepted were:

> First, does the California Labor Code apply to overtime work performed in California for a California-based employer by out-of-state plaintiffs in the circumstances of this case, such that overtime pay is required for work in excess of eight hours per day or in excess of forty hours per week?
> Second, does § 17200 apply to the overtime work described in question one?
> Third, does § 17200 apply to overtime work performed outside California for a California-based employer by out-of-state plaintiffs in the circumstances of this case if the employer failed to comply with the overtime provisions of the FLSA?

*Sullivan v. Oracle Corp.*, 557 F.3d 979, 983 (9th Cir. 2009). In answering these questions, the California Supreme Court concluded that the Legislature did not intend to extend the protections of California overtime law to out-of-state residents performing work outside of California.

While a couple stray district courts have misapplied the *Sullivan* rule outside of the labor-law context, the California Supreme Court and Courts of Appeal expressly rejected such rule and affirmed

certification of nationwide classes under California consumer protection laws. In *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001), involving consumer fraud claims, the Court of Appeals stated "We reject these arguments" which were that "applying California's unfair business practice law to residents of other states does not further any legitimate interest of this state and interferes with protections available under the law of other states" and "California's unfair business law cannot support nationwide class certification." *Id.* at 241-42.

In *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605 (1987), the Court of Appeal reversed the denial of certification of a national class under California law, directing the trial court to consider the matter under the *Shutts* test and California choice-of-law rules. The court noted:

> Clothesrigger identified California's fraud deterrence and consumer protection interests in applying its law to the claims of nonresident plaintiffs. Under certain facts California may have an important interest in applying its law to punish and deter the alleged wrongful conduct. . . . Further, the court simply erred in stating California has no interest in providing nonresident plaintiffs greater protection than their home states provide.

*Clothesrigger*, 191 Cal. App. 3d at 615-16.

In *Wash. Mut. Bank v. Superior Court*, 24 Cal. 4th 906 (2001), again involving consumer claims, the California Supreme Court repeatedly cited with approval and relied upon *Clothesrigger*, concluding,

> California law may be used on a classwide basis so long as its application is not arbitrary or unfair with respect to nonresident class members (*Phillips Petroleum Co. v. Shutts*, *supra*, 472 U.S. at 821-822), and so long as the interests of other states are not found to outweigh California's interest in having its law applied (*Bernhard v. Harrah's Club*, *supra*, 16 Cal. 3d at 320; *Clothesrigger*, *supra*, 191 Cal. App. 3d at 614).

*Wash. Mut. Bank*, 24 Cal. 4th at 921-22.

## XI. CONAGRA DID NOT OPPOSE PLAINTIFF'S NOTICE PLAN OR REQUEST TO SHIFT NOTICE COSTS

In his motion, Mr. Backus asked the Court to approve a plan for notice created in consultation with a third party notice administrator, and that the Court shift the cost for class notice to ConAgra. *See* Mot. at 20, *citing* Cal. Civ. Code § 1781(d); *Hunt v. Check Recovery Sys.*, 2007 U.S. Dist. LEXIS 58800, at *19 (N.D. Cal. July 25, 2007); *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137, 1144 (9th Cir. 2009); *Civ. Serv. Emps. Ins. Co. v. Super. Ct.*, 22 Cal. 3d 362, 365-66 (1978). ConAgra mentions neither the plan nor the request its cost be shifted to it. For the reasons stated in the motion, the plan

should be approved and ConAgra should bear its cost.

## XII. CONCLUSION

For the foregoing reasons, the Court should certify the nationwide class under Fed. R. Civ. P. 23(b)(3). In the alternative, if the Court should find that a nationwide class is not appropriate, the Court should certify a California class.

DATED: December 1, 2016

Respectfully Submitted,

/s/ Gregory S. Weston

**THE WESTON FIRM**
GREGORY S. WESTON
DAVID ELLIOT
ANDREW C. HAMILTON
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (313) 293-7071

***Counsel for Plaintiff***