IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY BACKUS,<br><br>    Plaintiff,<br><br>  v.<br><br>CONAGRA FOODS, INC.,<br><br>    Defendant.<br>_____/ | No. C 16-00454 WHA<br><br>**ORDER DENYING CLASS CERTIFICATION** |

**INTRODUCTION**

In this action in connection with the use of trans fats in margarine products, plaintiff seeks class certification. Plaintiff's motion is **DENIED**.

**STATEMENT**

For years, plaintiff Troy Backus purchased and consumed various margarine products manufactured and sold by defendant ConAgra Foods, Inc., under the brand name Fleischmann's. Fleischmann's products contained partially hydrogenated oil ("PHO"), the primary dietary source of artificial trans fat. Backus contends consumption of artificial trans fat is unhealthy based on numerous studies and sources, including the Food and Drug Administration's final determination in 2015 that PHOs were no longer generally recognized as safe for use in human food. *See* Final Determination Regarding Partially Hydrogenated Oils, 80 Fed. Reg. 34,650, 34,669 (June 17, 2015). Despite their PHO content, two Fleischmann's products — Original Margarine Sticks and Unsalted Margarine Sticks — stated on their back

labels, "The delicious taste of Fleischmann's enhances your favorite foods while maintaining your healthy lifestyle."[*]

Backus claims he would not have purchased the products absent this label statement, which "misleadingly implied" that the products were healthy. He further claims a "lay consumer" could not have discovered ConAgra's unlawful conduct through reasonable diligence because the "dangers of artificial trans fat" were unknown to him (Dkt. No. 35 at 13–14). He asserted various claims for relief under California law for both ConAgra's use of trans fat in its products and ConAgra's alleged mislabeling of its products. A previous order, however, dismissed all of Backus's claims except one for mislabeling — for the phrase "The delicious taste of Fleischmann's enhances your favorite foods while maintaining your healthy lifestyle" — and ordered additional discovery to ascertain whether Backus had standing to bring that surviving claim (Dkt. No. 44). Another order denying dismissal of this final claim following additional discovery concluded that, while Backus understood the dangers of trans fat as of April 30, 2015, he began buying the products at issue over a decade ago and thus established the requisite reliance and injury to assert his mislabeling claim (Dkt. No. 55 at 2).

Backus now seeks to certify the following nationwide class (Dkt. No. 59 at 2):

> All persons who purchased in the United States, on or after January 1, 2008, for household or personal use, Fleischmann's sticks containing artificial trans fat and the phrase "maintaining your healthy lifestyle."

Or, in the alternative, the following California class:

> All persons who purchased in California, on or after January 1, 2008, for household or personal use, Fleischmann's sticks containing artificial trans fat and the phrase "maintaining your healthy lifestyle."

**ANALYSIS**

1. **LEGAL STANDARDS.**

Federal Rule of Civil Procedure 23(a) provides, "One or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so

---

[*] According to Scott Brown, a Brand Manager at ConAgra, the phrase "healthy lifestyle" has not appeared on any other Fleischmann's products (Dkt. No. 62-5 at 2–3).

2

numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Rule 23(b) sets forth three conditions under which, if the prerequisites of Rule 23(a) are satisfied, a class action may be maintained. Class certification is appropriate if a plaintiff meets all the prerequisites of Rule 23(a) and at least one condition of Rule 23(b). *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956–57 (9th Cir. 2013).

**2.    RULE 23(A).**

### A.    Numerosity.

Numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable." F.R.C.P. 23(a)(1). Given that ConAgra sells hundreds of thousands of products each year, even the more limited proposed California class readily satisfies numerosity, and ConAgra does not contend otherwise.

### B.    Commonality.

Commonality is satisfied if "there are questions of law or fact common to the class." F.R.C.P. 23(a)(2). The party seeking class certification must show that their claims depend on a common contention "capable of classwide *resolution* — which means that determination of its *truth or falsity* will resolve an issue that is central to the validity of each one of the claims in one stroke." *Stockwell v. City & Cty. of San Francisco*, 749 F.3d 1107, 1112 (9th Cir. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

Here, commonality is satisfied because Backus's surviving claim depends on common issues of law and fact surrounding the central contention that ConAgra's labeling stating Fleischmann's products maintained a healthy lifestyle was unlawful given the products' trans fat content. This contention raises binary questions — *e.g.*, whether the products at issue were in fact unhealthy and whether ConAgra's labeling was therefore unlawful — susceptible to

resolution on a classwide basis. ConAgra's only response regarding commonality is a single footnote in its opposition, wherein it claims Backus fails to demonstrate commonality for "many of the[] same reasons" that he fails to show common issues predominate under Rule 23(b)(3) (Dkt. No. 63 at 13 n.4). The commonality requirement of Rule 23(a)(2), however, is less rigorous than the companion predominance requirement of Rule 23(b)(3). *Hanlon*, 150 F.3d at 1019. ConAgra's bare assertion that its arguments as to the latter are applicable to the former is therefore unpersuasive.

### C.     Typicality.

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." F.R.C.P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiff[], and whether other class members have been injured by the same course of conduct." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quotations omitted). "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020.

Superficially, Backus's claim appears to satisfy typicality. ConAgra's production and labeling of its products was in no way unique as to Backus, nor does Backus allege any unique injury that would distinguish him from the rest of the class. As ConAgra points out, however, our court of appeals has recognized that "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Relying on this principle, ConAgra raises several arguments as to why Backus is vulnerable to unique defenses that are atypical and threaten to become the focus of this lawsuit.

*First*, ConAgra points out that Backus purchased the products at issue during times when the labels at issue were not present on those products. Backus also purchased Fleischmann's products other than the ones at issue here, and those other products did not contain the "healthy lifestyle" claim at all (Dkt. No. 63 at 10–11). These arguments, in

4

1  isolation, are unpersuasive. True, Backus may have purchased many Fleischmann's products at
2  different times and for different reasons, but he may yet have relied at some point on the
3  "healthy lifestyle" claim in purchasing the products at issue during the time period at issue.

4  *Second*, ConAgra contends Backus cannot plausibly allege reliance or injury because he
5  has filed five lawsuits regarding PHOs and trans fats since April 30, 2015. In four other
6  lawsuits against Nestle, General Mills, Heinz, and Biscomerica, Backus asserted essentially the
7  same allegations he does here, *i.e.*, that trans fat is unsafe to consume and damaging to his
8  health (Dkt. No. 63-2 Exh. A at 129–40). In other words, as of April 30, 2015, when he first
9  filed suit against Nestle, Backus understood the dangers of PHOs and was no longer a "lay
10  consumer" who was unaware of the "dangers of artificial trans fat" (*id.* at 131–133; *see* Dkt.
11  No. 35 at 13–14). As stated, however, Backus first began buying the products at issue over a
12  decade ago, and the proposed class includes potential claims from as early as January 1, 2008
13  (*see* Dkt. No. 59 at 2). Thus, Backus's litigation history does not necessarily render his claim
14  atypical during the entire period from January 1, 2008, to April 30, 2015.

15  *Third*, ConAgra, citing Backus's deposition, contends his claim has actually been fatally
16  flawed since the late 1990s because at that time he "believed the consumption of trans fat was
17  not 'healthy' and that the [p]roducts at [i]ssue contained trans fat, but purchased them anyway"
18  (Dkt. No. 63 at 12). This truncates Backus's testimony. What Backus actually said was that,
19  around the late 1990s, he was "aware that trans fat was a bad fat . . . but not that it was an
20  artificial laboratory additive that is dangerous in any amount" (Dkt. No. 63-2 Exh. A at
21  100:5–100:22). From that point until 2008, he "sometimes avoided" food products that listed
22  trans fat as an ingredient depending on "how health conscious [he] was being," which was
23  "sporadic" prior to 2008. Importantly, he testified that, during that time period, he continued to
24  purchase Fleischmann's products because of the health claims on their labels (*id.* at 101–04).

25  This testimony is not quite as damaging as ConAgra suggests. It does, however, cast
26  into sharper relief the unique problem Backus faces in pursuing the claim at issue, namely, that
27  his extensive history with trans fat requires him "to prepare to meet defenses that are not typical
28  of the defenses which may be raised against other members of the proposed class." *See Hanon*,

5

1 976 F.2d at 508.  Specifically, and as ConAgra points out, Backus's theory is now broken up
2 into three segments.  Prior to 2008, he bought the products at issue for a long time before any
3 "healthy lifestyle" claims appeared on their labeling — and thus could not possibly have relied
4 on such labels (*see* Dkt. No. 62-5 at 3).  After April 2015, he continued buying the products at
5 issue despite knowing the full extent of dangers associated with trans fat and having sued based
6 on that knowledge.  Yet, in the interim, his continuing purchases of the products at issue were
7 supposedly in reliance on their "healthy lifestyle" labeling because, while he knew trans fat was
8 "a bad fat," he just did not realize it was an "artificial laboratory additive."  These
9 circumstances, taken together, create serious tension in Backus's reliance theory even though
10 each individual circumstance, in isolation, might not.

11     ConAgra has, moreover, made no secret of its incredulity regarding Backus's three-part
12 reliance theory and would predictably focus its litigation strategy on both the weaknesses in that
13 theory and the implications of Backus's litigation history.  The atypical vulnerability of
14 Backus's claim is therefore further exacerbated by unique challenges he would face regarding
15 his credibility and motives.  In fact, this problem has already manifested itself in, *e.g.*, Backus's
16 deposition, wherein ConAgra solicited extensive testimony regarding the relationship between
17 Backus and his attorney, Gregory Weston, in connection with their history of trans fat litigation.
18 To highlight just a few examples:  Backus testified that he met Attorney Weston through a
19 Craigslist advertisement "seeking consumers that perhaps had purchased trans-fat products"
20 (Dkt. No. 63-2 Exh. A at 11:4–11:15).  This advertisement was "the first time that [he] became
21 aware that there may be negative health consequences to the consumption of trans fats" (*id.* at
22 24:21–25:4).  He then "did a little research after learning a little bit about trans fat from Mr.
23 Weston" (*id.* at 126:17–126:20), which apparently included "articles that [he] received from
24 [his] attorney" (*id.* at 14:9–14:14).  He subsequently filed trans fat lawsuits (since April 30,
25 2015) against Nestle, General Mills, Heinz, Fleischmann's, and Biscomerica.  He also
26 acknowledged the possibility that other PHO or trans fat lawsuits may have been "threatened on
27 [his] behalf," though he did not know who the recipients of such threats may have been (*id.* at
28 126:22–128:9).

The foregoing are non-exhaustive highlights from the record that illustrate the unique and substantial vulnerability of Backus's position in this case. ConAgra has utilized, and would predictably continue to utilize, a defense strategy based in large part on attacking Backus's credibility and motives in light of his litigation background. Such defenses "threaten to become the focus of [this] litigation" but are not typical of defenses that would generally be raised against other members of the putative class. *See Hanon*, 976 F.2d at 508. To be clear, this order is mindful that representative claims need not be "substantially identical" to those of absent class members in order to be "typical," *see Hanlon*, 150 F.3d at 1020, and that defendants can always find some unique fault with every proposed class representative. On this record, however, Backus's claim not only lacks substantial identity with those of absent class members but also is decidedly atypical of the class.

Backus responds that apparent flaws in his theory of the case are a "merits question, not a class certification issue" (Dkt. No. 69 at 6). But this oversimplifies the law. It is true, as Backus points out, that our court of appeals in *Hanon* specifically emphasized "that the defense of non-reliance is not a basis for denial of class certification" because it goes to the merits of the case. *Hanon*, 976 F.2d at 509. But that is not the whole story. Since the merits of a putative class's substantive claims often overlap with Rule 23(a) requirements, a court considering class certification must consider the merits insofar as they are relevant in determining whether to certify a class. *Wal-Mart*, 564 U.S. at 350–51; *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011).

Even the language in *Hanon* that Backus invokes referenced only a general principle, the exception to which applies squarely to our case. In fact, immediately following the aforementioned passage relied upon by Backus, the *Hanon* decision went on to say:

> Nevertheless, we are at liberty to consider evidence which goes to the requirements of Rule 23 even though the evidence may also relate to the underlying merits of the case. A class may only be certified if we are satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. *Because of Hanon's unique situation, it is predictable that a major focus of the litigation will be on a defense unique to him.* Thus, Hanon fails to satisfy the typicality requirement of Rule 23(a).

7

*Hanon*, 976 F.2d at 509 (citations omitted, emphasis added). Thus, despite the general proposition that "non-reliance is not a basis for denial of class certification," the plaintiff in *Hanon* did not satisfy the typicality requirement of Rule 23(a) because his reliance theory "would be subject to serious dispute" as a result of, among other things, his "extensive experience" in prior litigation and "his relationship with his lawyers." In other words, his "unique background and factual situation require[d] him to prepare to meet defenses that [were] not typical of the defenses which may be raised against other members of the proposed class." *Id.* at 508. So too here.

The mere fact that ConAgra might, in general, raise non-reliance defenses or challenges regarding credibility or motives against Backus or other class members would not defeat class certification. But, since Backus is so uniquely vulnerable to such defense tactics as a result of his personal background, it is predictable that this litigation will focus on arguments and facts unique to him rather than generate common answers apt to drive resolution of the dispute on a classwide basis. *See Wal-Mart*, 564 U.S. at 350. Backus's surviving claim therefore cannot satisfy the typicality requirement of Rule 23(a).

This is so notwithstanding that Backus sufficiently established reliance and injury to survive dismissal (*see* Dkt. No. 55 at 2). At oral argument, counsel for Backus relied on the Court's previous order that Backus has standing to assert his mislabeling claims. That order, however, has limited cross-applicability here. The standards for dismissal and class certification differ. *See, e.g.*, *Wal-Mart*, 564 U.S. at 350 ("Rule 23 does not set forth a mere pleading standard.") As counsel for Backus has acknowledged, "the standard for Article III is the plaintiff allege an 'identifiable trifle' of an injury" (Dkt. No. 50 at 8). "While [Backus] needs to prove his deception in order to establish ConAgra's liability, to invoke the jurisdiction of this Court he need not do more than allege, and [then] testify under oath, that he was defrauded by ConAgra" (*id.* at 7–8). The present issue is not whether Backus has standing to bring a mislabeling claim but whether he should be permitted to assert that claim on behalf of a class. On this record, though Backus has standing, his claim does not satisfy the typicality

8

requirement of Rule 23(a) because it is uniquely vulnerable to defenses atypical of those that would be raised against other members of the class. *See Hanon*, 976 F.2d at 508.

### D. Adequate Representation.

A proposed class representative is adequate if he "will fairly and adequately protect the interests of the class." F.R.C.P. 23(a)(4). Our court of appeals has explained that a representative meets this standard if he (1) has no conflicts of interest with other class members, and (2) will prosecute the action vigorously on behalf of the class. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Here, ConAgra does not contend that Backus has conflicts of interest with other class members or that he would not prosecute the action vigorously.

Nonetheless, this order concludes that Backus is an inadequate class representative so as to preclude class certification under Rule 23(a). The rub is that "class certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Hanon*, 976 F.2d at 508 (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)). This principle holds true "[r]egardless of whether the issue is framed in terms of the typicality of the representative's claims . . . or the adequacy of its representation." *Gary Plastic Packaging Corp.*, 903 F.2d at 180; *see also Petersen v. Costco Wholesale Co., Inc.*, 312 F.R.D. 565, 577 (C.D. Cal. Jan. 25, 2016) (Judge David Carter) ("Unique defenses can go to either the typicality or adequacy of class representatives.").

Such danger is present here and is not insubstantial since, as described, Backus has been and will predictably continue to be diverted by defenses unique to him in this litigation. Moreover, Backus's representation would carry a serious risk of prejudicing absent class members in the eyes of a jury. For example, from testimony residing in his deposition, our jury might infer that Backus is not truly an aggrieved consumer but a hired plaintiff executing his attorney's raids on the deep pockets of food manufacturers. Given the serious risk of prejudice to absent class members, Backus is an inappropriate class representative despite having no apparent conflicts of interest or lack of willingness to vigorously prosecute the action.

\*            \*            \*

In short, whether the issue is cast in terms of typicality or adequacy, Backus's claim fails to satisfy the prerequisites for class certification under Rule 23(a). His motion must therefore be denied. This order does not reach arguments as to the additional class certification requirements of Rule 23(b) or ascertainability, nor does it rely on the declarations of Drs. Robert Bowen and Nathan Wong offered in support of said arguments.

## CONCLUSION

For the foregoing reasons, class certification is **DENIED**. ConAgra's motion to strike the declarations of Drs. Bowen and Wong is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: December 22, 2016.

WILLIAM ALSUP  
UNITED STATES DISTRICT JUDGE